# EXHIBIT 9

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

RED TREE INVESTMENTS, LLC,

　　　　　　　　Plaintiff,

　　　　-against-

PETROLEOS DE VENEZUELA S.A. and PDVSA
PETROLEO S.A.,

　　　　　　　　Defendants.

Index No. _____

---

## AFFIDAVIT OF DANIEL WALLITT

I, Daniel Wallitt, being duly sworn, hereby depose and say:

1.　　I currently serve as a Managing Director for GE Capital EFS Financing Inc. ("GE Capital EFS"), and have held this position since 2015. In this capacity, I am personally familiar with the facts set forth in this Affidavit and know them to be true, except where I indicate otherwise.

2.　　GE Capital EFS is a Delaware corporation, a financial services subsidiary of General Electric Corporation, and the successor to General Electric Capital Corporation ("GE Capital").

## THE OUTSTANDING 2015 NOTES

3.　　GE Capital was the original holder of a note dated as of March 27, 2015, issued by Petróleos de Venezuela S.A. ("PDVSA") under a note agreement also dated March 27, 2015 (the "2015 Note Agreement"), between and among GE Capital, PDVSA, PDVSA Petróleo S.A. ("Petróleo"), and Union Capital Group, which note provided that PDVSA agreed to pay GE Capital or its assigns the original principal balance of $256,555,604.85 (the "2015 R-1 Note").

1

A copy of the 2015 Note Agreement is attached to the Quinn Emanuel attorney affidavit (the "QE Affidavit"), as Exhibit A.

4.     On that same date March 27, 2015, the 2015 R-1 Note was annulled and replaced by two separate two notes issued by PDVSA under the 2015 Note Agreement (together, the "Outstanding 2015 Notes"), one of which provided that PDVSA agreed to pay GE Capital or its assigns the original principal balance of $131,855,116.31 (the "2015 R-2 Note"), while the second provided that PDVSA agreed to pay SACE S.p.A. ("SACE") or its assigns the original principal balance of $124,700,488.54 (the "2015 R-3 Note"), both with interest at a rate of 6.5% per annum and the default rate to be paid at a rate of 8.5% per annum. Copies of the Outstanding 2015 Notes are attached to the QE Affidavit as Exhibits B and C, respectively.

5.     Under Article VI of the 2015 Note Agreement, Petróleo guaranteed PDVSA's prompt payment when due, including defined costs and fees (the "2015 Guarantee").

6.     Effective November 4, 2015, GE Capital EFS became the successor to GE Capital. As a result, effective that date GE Capital EFS became a party to 2015 Note Agreement and the legal owner of the 2015 R-2 Note, in the place and stead of GE Capital.

## MATURATION OF THE OUTSTANDING 2015 NOTES

7.     Under the Outstanding 2015 Notes, PDVSA was obligated to make quarterly payments to GE Capital EFS (as successor of GE Capital) and SACE, respectively, in accordance with the schedule included in the respective Exhibit A to such Outstanding 2015 Notes, normally of a combined principal amount of $21,379,633.74, starting on March 31, 2015. *See* QE Affidavit Exhibit B at 3; *id.* Exhibit C at 3.

8.     March 27, 2018 is defined as the maturity date for all notes issued under the 2015 Note Agreement. On that date, PDVSA was obligated to pay GE Capital EFS and SACE, together, $21,379,633.74 in total principal and $347,419.04 in total interest on the Outstanding

2

2015 Notes. PDVSA failed to make payment to either GE Capital EFS or SACE on March 27, 2018 and has not made any payment since. The 2015 Note Agreement has matured by its terms and those amounts, along with interest on those amounts, remain unpaid by PDVSA.

9.     Under the terms of the 2015 Guarantee, upon the Outstanding 2015 Notes becoming due and payable pursuant to Article VII of the 2015 Note Agreement, Petróleo was obligated to promptly pay all outstanding amounts due on the Outstanding 2015 Notes. *See* QE Affidavit Exhibit A, § 6.01. Petróleo has not made a single payment under the Outstanding 2015 Notes to GE Capital EFS (as successor of GE Capital) or SACE, as applicable.

10.     On July 26, 2018, GE Capital EFS sent notice of missed payment to PDVSA and Petróleo. A copy of that notice is enclosed herein as Exhibit A.

## ASSIGNMENTS OF THE OUTSTANDING 2015 NOTES

11.     On August 10, 2018, SACE entered into an assignment and acceptance of the 2015 R-3 Note with GE Capital EFS (the "2015 R-3 Note Assignment"). A copy of the 2015 R-3 Note Assignment is enclosed as Exhibit B. On August 28, 2018, SACE issued a notification to GE Capital EFS confirming August 10, 2018 as the effective date for the assignment made under the 2015 R-3 Note Assignment (the "2015 R-3 Note Effective Date Notice"). A copy of the 2015 R-3 Note Effective Date Notice is enclosed as Exhibit C.

12.     On September 6, 2018, GE Capital EFS, in its capacity as Administrative Agent, sent by electronic mail to PDVSA and Petróleo the 2015 R-3 Note Assignment and a formal notice of assignment to PDVSA and Petróleo. A copy of this notice is enclosed as Exhibit D.

13.     On January 25, 2019, GE Capital EFS entered into an assignment and acceptance of the Outstanding 2015 Notes (the "2015 Outstanding Notes Assignment") with Red Tree

3

Investments, LLC ("Red Tree"). A copy of the 2015 Outstanding Notes Assignment is enclosed as Exhibit E.

14.     The 2015 Outstanding Notes Assignment reflects a principal balance of $21,379,633.74, as well as unpaid interest, pursuant to the 2015 Note Agreement as of the date of the 2015 Outstanding Notes Assignment.

15.     On January 25, 2019, GE Capital EFS, in its then-capacity as Administrative Agent, sent PDVSA and Petróleo an electronic mail notice of the assignment of the Outstanding 2015 Notes. A copy of that notice is enclosed as Exhibit F.

DANIEL WALLITT

Sworn to before me this
25th day of January 2019

JANET DELILLE
Notary Public, State of New York
No. 01DE6197265
Qualified in Queens County
Commission Expires Nov. 24, 20___

4

Case 1:19-cv-02519-AJN   Document 25-11   Filed 04/11/19   Page 7 of 48

# EXHIBIT A



**GE Capital EFS Financing, Inc.**
901 Main Avenue
Norwalk, Connecticut 06851

July 26, 2018

Petróleos de Venezuela, S.A.
PDVSA Petróleo, S.A.
Avenida Libertador
Edificios Petroleos de Venezuela, Torre Este, Piso 8
La Campiña
Caracas, Venezuela

Attention: Iliana Ruzza, Emir Manrique and Ana Maria España
Facsimile: +58 212 708 1441
Email: ruzzai@pdvsa.com, manriqueej@pdvsa.com, and espanaam@pdvsa.com

Attention: Anabella Rivas and Edoardo Orsoni
Facsimile: +58 212 708 4989
Email: rivasaay@pdvsa.com and orsonie@pdvsa.com

**Re: Notice of Missed Payment under the Note Agreement dated as of March 27, 2015 among Petróleos de Venezuela, S.A., as Issuer, PDVSA Petróleo, S.A., as Guarantor, GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as Initial Noteholder and as Administrative Agent, and Union Capital Group, as Lead Arranger (the "Note Agreement").**

To Whom It May Concern:

This letter is being sent by the Administrative Agent on behalf of itself and the Noteholders to notify the Issuer and the Guarantor of a missed payment under the terms of the Note Agreement. Capitalized terms used in this letter but not defined herein shall have the meaning given to them in the Note Agreement.

Pursuant to Article II of the Note Agreement, the Issuer was obligated to make a principal and interest payment to the Administrative Agent, for the account of the Noteholders, in the aggregate amount of Twenty One Million, Seven Hundred Twenty Seven Thousand, Fifty Two Dollars and Seventy Nine Cents ($21,727,052.79) on March 27, 2018, the Maturity Date under the Note Agreement (the "Missed Payment"). As of the date hereof, the Missed Payment remains unpaid.

Article VII(a) of the Note Agreement provides that it would be an Event of Default under the Note Agreement if the Issuer fails "to pay the principal of, or interest on any of the Notes when such principal becomes due and payable, including at any of the Repayment Dates, by acceleration or otherwise, and such failure continues for a period of five (5) days after written notice thereof has been given to the Issuer."

Case 1:19-cv-02519-AJN   Document 25-11   Filed 04/11/19   Page 9 of 48

This letter constitutes written notification to the Issuer for purposes of Article VII(a) of the Note Agreement.  Accordingly, notice is given that if the Issuer fails to make the above mentioned payment within five (5) days from the date hereof, an Event of Default will occur. In addition, the Issuer should understand that if an Event of Default occurs under this Note Agreement, it would also automatically trigger an Event of Default under (i) the Credit Agreement dated as of December 27, 2016 among Petróleos de Venezuela, S.A., as Borrower, PDVSA Petróleo, S.A., as Guarantor, GE Capital EFS Financing, Inc., as Agent, and the Lenders party thereto (the "Credit Agreement") and, (ii) pursuant to Section 8.05 *(Cross-Event of Default)* of the Credit Agreement, the Note Agreement dated as of May 13, 2016 among the Issuer, as issuer, the Guarantor, as guarantor, and GE Capital EFS Financing, Inc., as initial noteholder and administrative agent.

The Administrative Agent hereby reserves all rights and remedies available to it under the Note Agreement, each other Finance Document, as well as under applicable law, as a result of the Missed Payment that the Issuer has failed to make in accordance with the terms of the Note Agreement.  Such remedies include, without limitation, the right to collect default interest at the rate with respect to the missed payments and any other amounts not paid when due as provided in Section 2.04 of the Note Agreement.

No failure or delay on the part of the Administrative Agent or any Noteholder in exercising any of their rights or remedies under the Note Agreement and each other Finance Document, as well as under applicable law, shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy.

This letter shall be governed by and construed in accordance with the laws of the State of New York.

Thank you.

GE CAPITAL EFS FINANCING, INC.

By: _____

Name:  Daniel Wallitt

Title:   Authorized Signatory

Case 1:19-cv-02519-AJN   Document 25-11   Filed 04/11/19   Page 10 of 48

# EXHIBIT B

## ASSIGNMENT AND ACCEPTANCE

This Assignment and Acceptance (this "<u>Assignment</u>") is dated as of the Effective Date set forth below and is entered into by and between **SACE S.p.A.** (the "<u>Assignor</u>") and **GE Capital EFS Financing, Inc.** (as successor to General Electric Capital Corporation) (the "<u>Assignee</u>"). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Note Agreement identified below (the "<u>Note Agreement</u>"), receipt of a copy of which is hereby acknowledged by the Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto (the "<u>Standard Terms and Conditions</u>") are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

Subject to receipt by the Assignor of the Transfer Price, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and assumes from the Assignor, subject to and in accordance with the Standard Terms and Conditions and the Finance Documents, as of the Effective Date set forth below, all of the interest in and to the Assignor's rights and obligations under the Note Agreement, the other Transaction Documents and any other agreements, documents or instruments delivered pursuant thereto or for the benefit of the Noteholders relating thereto, which represents the amount identified below of all of the Assignor's outstanding rights and obligations under the Note identified below (collectively, the "<u>Assigned Interest</u>"). Such sale and assignment is without recourse to the Assignor and, except as expressly provided in this Assignment, without representation or warranty by the Assignor.

| | | |
|---|---|---|
| (a) | Assignor: | SACE, S.p.A. |
| (b) | Assignee: | GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) |
| (c) | Issuer: | Petróleos de Venezuela, S.A. |
| (d) | Administrative Agent: | GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as administrative agent under the Note Agreement |
| (e) | Note Agreement: | The Note Agreement, dated as of March 27, 2015 (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms), by and among Petróleos de Venezuela, S.A. as Issuer, PDVSA Petróleo, S.A., as Guarantor, the Noteholders that are a party thereto from time to time and GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as Administrative Agent. |
| (f) | Assigned Interest: | Unpaid principal balance of $10,391,707.36, together with accrued and unpaid interest, on Note No. R-3 dated March 27, 2015 in the original principal amount of $124,700,488.54 |
| (g) | Transfer Price: | ███████████ |
| (h) | Account for Payments: | GE Capital EFS Financing, Inc. Bank Name: Deutsche Bank Trust Company Account number: 50292590 Account name: GEC EFSF, Inc Loan COE-EFS ABA – 021-001-033 |

**Effective Date:  August 10, 2018 or such other date on which the Transfer Price has been received by the Assignor in its bank account; within five (5) business days of the receipt of the Transfer Price the Assignor agrees to provide a written certification to the Assignee confirming receipt of the Transfer Price and the date of such receipt).**

Termination:  If (i) the Assignee fails to initiate the wire transfer(s) for payment of the Transfer Price within three (3) business days after execution of this Agreement, or (ii) the Assignor does not receive the Transfer Price by September 28, 2018, then Assignor may in its sole discretion elect to terminate this Assignment upon written notice to Assignee.  If subsequent to any such termination Assignor receives payment intended to pay all or any portion of the Transfer Price, Assignor shall promptly return any such payment to Assignee.  This provision shall survive any expiration or termination of this Assignment.

The terms set forth in this Assignment are hereby agreed to:

**ASSIGNOR**
SACE S.p.A.

By: _____
Name:
Title:

**ASSIGNEE**
GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation)

By: _____
Name: Daniel Wallith
Title: Authorized Signatory

Case 1:19-cv-02519-AJN   Document 25-11   Filed 04/11/19   Page 14 of 48

The terms set forth in this Assignment are hereby agreed to:

**ASSIGNOR**
SACE S.p.A.

By: _____

Name: Michele De Capitani
Title:   Chief Financial Officer


**ASSIGNEE**
GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation)


By: _____
Name:
Title:

NOTE AGREEMENT, DATED AS OF MARCH 27, 2015, BY AND AMONG PETRÓLEOS DE
VENEZUELA, S.A., AS ISSUER, PDVSA PETRÓLEO, S.A., AS GUARANTOR, THE
NOTEHOLDERS THAT ARE A PARTY THERETO FROM TIME TO TIME AND GE
CAPITAL EFS FINANCING, INC. (AS SUCCESSOR TO GENERAL ELECTRIC CAPITAL
CORPORATION), AS ADMINISTRATIVE AGENT

STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT
AND ACCEPTANCE

1.      **Representations and Warranties**

1.1     **Assignor**

The Assignor (a) represents and warrants that (i) it is the legal and beneficial owner of the
Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or
other adverse claim, and (iii) it has full power and authority, and has taken all action
necessary, to execute and deliver this Assignment and to consummate the transactions
contemplated hereby; and (b) assumes no responsibility with respect to (i) any statements,
warranties or representations made in or in connection with the Note Agreement or any
other agreement, instrument or document delivered pursuant thereto or for the benefit of
the Noteholders relating thereto, other than this Assignment (collectively, the "Finance
Documents"), (ii) the execution, legality, validity, enforceability, genuineness, sufficiency
or value of the Finance Documents, or any collateral thereunder, (iii) the financial condition
of the Issuer, the Guarantor, any of the Subsidiaries or any of their respective Affiliates in
respect of any Finance Document, or (iv) the performance or observance by the Issuer, the
Guarantor, any of the Subsidiaries or any of their respective Affiliates of any of their
respective obligations under any Finance Document.

1.2     **Assignee**

The Assignee (a) represents and warrants that (i) it has full power and authority, and has
taken all action necessary, to execute and deliver this Assignment and to consummate the
transactions contemplated hereby and to become a Noteholder under the Note Agreement,
(ii) it is not an Eligible Institution and is not an Ineligible Transferee, (iii) from and after
the Effective Date, it shall be bound by the provisions of the Note Agreement and, to the
extent of the Assigned Interest, shall have the obligations of a Noteholder thereunder, and
(iv) it has received a copy of the Note Agreement, together with copies of the most recent
financial statements delivered pursuant to Section 5.04 thereof and such other documents
and information as it has deemed appropriate to make its own credit analysis and decision
to enter into this Assignment and to purchase the Assigned Interest on the basis of which it
has made such analysis and decision; and (b) agrees that (i) it will, independently and
without reliance on the Administrative Agent, the Assignor or any other Noteholder, and
based on such documents and information as it shall deem appropriate at the time, continue
to make its own credit decisions in taking or not taking action under the Finance
Documents, and (ii) it will perform in accordance with their terms all of the obligations
which by the terms of the Finance Documents are required to be performed by it as a
Noteholder.

FILED: NEW YORK COUNTY CLERK 02/15/2019 04:37 PM
NYSCEF DOC. NO. Case 1:19-cv-02519-AJN   Document 25-11   Filed 04/11/19   Page 16 of 48

INDEX NO. 651005/2019

RECEIVED NYSCEF: 02/15/2019

2. **Payments**

From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest and other amounts) to the Assignee.

3. **General Provisions**

This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and permitted assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy and electronic mail shall be equally effective to the delivery of a manually executed counterpart of this Assignment. THIS ASSIGNMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

4. **Costs and Expenses**

The Assignee agrees to pay all reasonable third-party out-of-pocket costs and expenses actually incurred by the Assignor in connection with the execution or enforcement of this Assignment. The Assignee shall reimburse the Assignor, by no later than five (5) business days from the date of receipt of the relevant written request from the Assignor (i) for any such costs and expenses and (ii) from any Indemnified Withholding Taxes (as defined below) imposed on the Assignor in connection with the execution and/or performance of this Agreement.

5. **Tax Gross-up**

The payment of the Transfer Price shall be made by the Assignee without any tax deduction or withholding unless such tax deduction or withholding is required by law.

If the Assignee is required by applicable United States federal income tax law to deduct and withhold Indemnified Withholding Taxes, then the amount of the Transfer Price shall be increased by an additional amount so that after making all required withholdings or deductions for Indemnified Withholding Taxes from such payment, the Assignor receives the same amount it would have received had no such withholdings or deductions for such Indemnified Withholding Taxes been required. Indemnified Withholding Taxes shall mean: United States federal income taxes collected by means of withholding or otherwise charged, to the extent such taxes are imposed due to (i) applicable United Sates federal income tax law or (ii) the tax treaty between Italy and the United Sates. In addition, the Assignee shall not be required to pay additional amounts hereunder to the extent that the amount of Indemnified Withholding Taxes: (x) could have been reduced or avoided due to the Assignor's failure to provide timely such forms or other documentation that the Assignee reasonable requests (at no out-of-pocket expense to the Assignor) in a timely manner, and which form or other documentation the Assignor is able legally to provide.

5. **As-Is Basis**

WITH RESPECT TO THE ASSIGNED INTEREST, EXCEPT FOR THE ASSIGNOR'S REPRESENTATIONS IN THIS AGREEMENT, SUCH ASSIGNED INTEREST IS

HEREBY SOLD, ASSIGNED, TRANSFERRED AND CONVEYED TO ASSIGNEE ON AN "AS IS", "WHERE IS" BASIS, WITHOUT ANY REPRESENTATION, WARRANTY, GUARANTY, PROMISE, PROJECTION OR PREDICTION WHATSOEVER WITH RESPECT TO SUCH ASSIGNED INTEREST, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW. THE ASSIGNOR FURTHER ACKNOWLEDGES THAT IT IS AWARE OF THE CURRENT NON-PAYMENTS UNDER THE NOTE AGREEMENT IN CONNECTION WITH THE ASSIGNED INTEREST.

[remainder of page intentionally left blank]

# EXHIBIT C



August 28, 2018

**GE Capital EFS Financing Inc. (as successor to General Electric Capital Corporation),**
In its capacity as Initial Noteholder
901 Main Avenue
Norwalk, CT 06851
United States of America

Atn:    Portfolio Manager

Sirs:

        Reference is made to that certain Note Agreement, dated as of March 27, 2015 (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms, the "Note Agreement"), by and among Petróleos de Venezuela, S.A., a corporation (*sociedad anónima*) organized under the laws of the Bolivarian Republic of Venezuela as issuer, PDVSA Petróleo, S.A. a corporation (*sociedad anónima*) organized under the laws of the Bolivarian Republic of Venezuela as guarantor, GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), a Delaware corporation, as initial noteholder (the "Initial Noteholder"), GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), a Delaware corporation, as administrative agent, and Union Capital Group, as lead arranger.

        Reference is also made to that certain Assignment and Acceptance, dated as of August 10, 2018, whereby SACE, S.p.A. has assigned to the Initial Noteholder the amount then outstanding of the Note (as defined in the Note Agreement) payable to SACE, S.p.A., subject to the terms and conditions stipulated in that Assignment and Acceptance.

        We hereby notify you that on this date, August 10, 2018, SACE, S.p.A. has received the Transfer Price (as defined in the Assignment and Acceptance). Consequently, the Effective Date (as defined in the Assignment and Acceptance) of such Assignment and Acceptance, and of the assignments and assumptions referenced therein, is August 10, 2018.

Yours truly,

**SACE, S.p.A.**

Michele De Capitani
Authorized Signatory

SACE SpA
Sede Legale
Piazza Poli, 37/42 | 00187 Roma
T +39 06 67361 | F +39 06 6736225

Capitale Sociale € 3.730.323.610,00
Iscrizione al Reg. Imp. Roma
C.F. e P.IVA 05804521002

Società soggetta all'attività
di direzione e coordinamento di Cassa
depositi e prestiti SpA (unico socio)

# EXHIBIT D



August 28, 2018

**Petróleos de Venezuela, S.A.**
La Campiña
Avenida Libertador
Calle El Empalme
Edificio Petróleos de Venezuela, Torre Este, Piso 8
Caracas, Venezuela

Attn:   Iliana Ruzza, Emir Manrique, Víctor Aular, Abraham Ortega, Anabella Rivas and
Edoardo Orsoni

**PDVSA Petróleo, S.A.**
La Campiña
Avenida Libertador
Calle El Empalme
Edificio Petróleos de Venezuela, Torre Este, Piso 8
Caracas, Venezuela

Attn:   Iliana Ruzza, Emir Manrique, Víctor Aular, Abraham Ortega, Anabella Rivas and
Edoardo Orsoni

**GE Capital EFS Financing Inc. (as successor to General Electric Capital Corporation),**
In its capacity as Administrative Agent
901 Main Avenue
Norwalk, CT 06851
United States of America

Atn:   Portfolio Manager

Sirs:

Reference is made to that certain Note Agreement, dated as of March 27, 2015 (as
the same may be amended, restated, supplemented or otherwise modified from time to time
in accordance with its terms, the "Note Agreement"), by and among Petróleos de Venezuela,
S.A., a corporation (*sociedad anónima*) organized under the laws of the Bolivarian Republic
of Venezuela as issuer (the "Issuer"), PDVSA Petróleo, S.A. a corporation (*sociedad
anónima*) organized under the laws of the Bolivarian Republic of Venezuela as guarantor,
GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), a
Delaware corporation, as initial noteholder (the "Initial Noteholder"), GE Capital EFS
Financing, Inc. (as successor to General Electric Capital Corporation), a Delaware
corporation, as administrative agent (the "Administrative Agent"), and Union Capital Group,
as lead arranger. Capitalized terms used but not defined in this letter have the meanings
assigned to them in the Note Agreement.

SACE SpA
Sede Legale
Piazza Poli, 37/42 | 00187 Roma
T +39 06 67361 | F +39 06 6736225

Capitale Sociale € 3.730.323.610,00
Iscrizione al Reg. Imp. Roma
C.F. e P.IVA 05804521002

Società soggetta all'attività
di direzione e coordinamento di Cassa
depositi e prestiti SpA (unico socio)



Reference is also made to Section 9.04(b) of the Note Agreement according to which, upon the occurrence and continuance of an Event of Default, each Noteholder may assign to any Person or Persons all or a portion of its interests, rights and obligations under the Note Agreement and the other Finance Documents with notice to the Issuer and the Administrative Agent, and to Section 2.11 of the Note Agreement pursuant to which a Noteholder may transfer and exchange its Note in whole or in part.

We hereby notify you that on August 10, 2018, SACE, S.p.A. assigned to GE Capital EFS Financing, Inc. the unpaid principal balance of $10,391,707.38 together with accrued and unpaid interest in the amount of $418,975.01 , on Note No. R-3 dated March 27, 2015 in the original principal amount of $124,700,488.54 (the "Note"), and all of SACE, S.p.A.'s interests, rights and obligations under the Note Agreement equivalent to the Note assigned to GE Capital EFS Financing, Inc.

Attached hereto is a fully executed Assignment and Acceptance, dated as of August 10, 2018, between the undersigned as assignor and GE Capital EFS Financing, Inc. as assignee evidencing such assignment.

Yours truly,

**SACE, S.p.A.**

Michele De Capitan
Authorized Signatory

SACE SpA
Sede Legale
Piazza Poli, 37/42 | 00187 Roma
T +39 06 67361 | F +39 06 6736225

Capitale Sociale € 3.730.323.610,00
Iscrizione al Reg. Imp. Roma
C.F. e P.IVA 05804521002

Società soggetta all'attività
di direzione e coordinamento di Cassa
depositi e prestiti SpA (unico socio)

# EXHIBIT E

## ASSIGNMENT AND ACCEPTANCE

This Assignment and Acceptance (this "Assignment") is dated as of January 25, 2019 and is entered into by and between **GE Capital EFS Financing, Inc.** (as successor to General Electric Capital Corporation) (the "Assignor") and **Red Tree Investments, LLC** (the "Assignee"). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Note Agreement identified below (the "Note Agreement"), receipt of a copy of which is hereby acknowledged by Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto (the "Standard Terms and Conditions") are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

On the Effective Date (as defined below), Assignor hereby irrevocably sells and assigns to Assignee, and Assignee hereby irrevocably purchases and assumes from Assignor, subject to and in accordance with the Standard Terms and Conditions and the Finance Documents, all of Assignor's rights, title, and interest in, to and under the Notes (as defined below) and, to the extent related thereto, all of the following: (i) the Note Agreement and the other Transaction Documents, and any other agreements, documents, guarantees and instruments delivered pursuant thereto or for the benefit of the Noteholders; and (ii) all principal, interest, claims, payments, proceeds, distributions of any kind arising from the foregoing ("Distributions") (clauses (i) and (ii) collectively, the "Assigned Interest").

Prior to the Effective Date and as conditions precedent to the transaction contemplated by this Assignment: (i) Assignor and Assignee shall each execute and deliver into escrow counterpart copies of this Assignment, (ii) Assignor shall execute and deliver into escrow Assignor's resignation as Administrative Agent under the Note Agreement (the "Agent's Resignation"); (iii) Assignee shall execute and deliver into escrow Assignee's acceptance of the Agent's Resignation and the appointment and acceptance of Assignee as the successor Administrative Agent under the Note Agreement; (iv) Assignor shall deliver into escrow the original Note R-2 referenced below as part of the Notes, together with a note power (endorsed in blank) and together with a medallion signature guarantee affixed thereto and (v) Assignor shall execute and deliver into escrow written notice of the assignment of the Notes by Assignor to Assignee and confirmation of the Effective Date for this Assignment (with the Effective Date set forth therein and herein upon receipt of the Purchase Price) (the "Transfer Notice"). Upon satisfaction of the execution and delivery of each of the foregoing documents (collectively and together with this Assignment, the "Assignment Documents") by the parties hereto (as the case may be), Assignee shall, within one (1) business day, pay Assignor the Purchase Price (defined below) in immediately available funds to Assignor's account designated below (as the same may be subsequently amended or updated by Assignor).

The sale and assignment of the Assigned Interest contemplated hereby shall become effective on the "Effective Date", which shall be the date on which Assignor shall have received the Purchase Price, in which event the Assignment Documents may be delivered from escrow to Assignee with copies thereof delivered to Assignor.

On the Effective Date, Assignor agrees to deliver to the Issuer, or Issuer's representatives, as the case may be, and the Administrative Agent the Transfer Notice (with a copy of such written notice sent to Assignee).

Assignor's Account:

GE Capital EFS Financing, Inc.
Deutsche Bank Trust Company America
60 Wall Street, 28th, New York, NY 10005
ABA# 021-001-033

Account No: 50278772
Account Name: GECC EFS/T&I Depository Account

| (a) | Assignor: | GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) |
|---|---|---|
| (b) | Assignee: | Red Tree Investments, LLC |
| (c) | Issuer: | Petróleos de Venezuela, S.A. |
| (d) | Existing Administrative Agent: | GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) |
| (e) | Note Agreement: | The Note Agreement, dated as of March 27, 2015 (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms), by and among Petróleos de Venezuela, S.A. as Issuer, PDVSA Petróleo, S.A., as Guarantor, the Noteholders that are a party thereto from time to time and GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as Administrative Agent. |
| (f) | Notes: | Aggregate outstanding principal amount of $10,987,926.35, together with accrued and unpaid interest, on Note R-2 dated March 27, 2015, in the original outstanding principal amount of $131,855,116.31. |
| | | Aggregate outstanding principal amount of $10,391,707.36, together with accrued and unpaid interest, on Note R-3 dated March 27, 2015, in the original outstanding principal amount of $124,700,488.54. |
| (g) | Purchase Price: | Such amount set forth in the purchase price letter by and between the Assignor and the Assignee. |
| (h) | Assignee's Account for Payments: | ABA No.: 021000018<br>Beneficiary Account No: 8901212318<br>Beneficiary Account Name:<br>Wells Fargo Securities, LLC<br>FFC Account No.: 2MA01252<br>FFC Account Name: Red Tree Investments, LLC |
| (i) | Effective Date: | January 25, 2019 |

*[signature page follows]*

The terms set forth in this Assignment are hereby agreed to:

**ASSIGNOR:**
GE CAPITAL EFS FINANCING, INC.

By: _____

Name: Daniel Wallitt
Title: Authorized Signatory

**ASSIGNEE:**
RED TREE INVESTMENTS, LLC

By: _____

Name: Lauren Murray
Title: Authorized Signatory

Assignee's Notice Information:

Red Tree Investments, LLC
c/o Daniel Salinas-Serrano
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
202-905-4668 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielsalinas@quinnemanuel.com

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR:
GE CAPITAL EFS FINANCING, INC.

By: _____
Name:
Title:

ASSIGNEE:
RED TREE INVESTMENTS, LLC

By: _____
Name: Lauren Murray
Title: Authorized Signatory

Assignee's Notice Information:

Red Tree Investments, LLC
c/o Daniel Salinas-Serrano
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
202-905-4668 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielsalinas@quinnemanuel.com

ANNEX 1

## NOTE AGREEMENT, DATED AS OF MARCH 27, 2015, BY AND AMONG PETRÓLEOS DE VENEZUELA, S.A., AS ISSUER, PDVSA PETRÓLEO, S.A., AS GUARANTOR, THE NOTEHOLDERS THAT ARE A PARTY THERETO FROM TIME TO TIME AND GE CAPITAL EFS FINANCING, INC. (AS SUCCESSOR TO GENERAL ELECTRIC CAPITAL CORPORATION), AS ADMINISTRATIVE AGENT

### STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT AND ACCEPTANCE

1.    **Representations and Warranties of Assignor**

Assignor represents and warrants to Assignee as of the date hereof and as of the Effective Date that:

1.1    (i) it, acting on behalf of itself and its Affiliates, is the sole legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance, pledge, security interest, setoff or other adverse claim, and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and assumes no responsibility with respect to (w) any statements, warranties or representations made in or in connection with the Finance Documents except for any statements, warranties, representations expressly made by Assignor in any Finance Document or this Assignment, (x) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Finance Documents, or any collateral thereunder, (y) the financial condition of the Issuer, the Guarantor, any of the Subsidiaries or any of their respective Affiliates in respect of any Finance Document or (z) the performance or observance by the Issuer, the Guarantor, any of the Subsidiaries or any of their respective Affiliates of any of their respective obligations under any Finance Document.

1.3    The aggregate outstanding principal amount of the R-2 Note is $10,987,926.35 and the original outstanding principal amount of the R-2 Note is $131,855,116.31. There is no funding obligation of any kind in respect of the R-2 Note.  The aggregate outstanding principal amount of the R-3 Note is $10,391,707.36 and the original outstanding principal amount of the R-3 Note is $124,700,488.54. There is no funding obligation of any kind in respect of the R-3 Note.

1.4    Assignor (i) has not, on or after March 31, 2018, received any Distributions from the Issuer or the Guarantor, or any of their respective Affiliates, in connection with the Assigned Interest, (ii) has not entered into any agreement with the Issuer or an Affiliate of the Issuer to make loans to or otherwise extend credit to or for the benefit of the Issuer or an Affiliate of the Issuer or (iii) does not have any unpaid or outstanding liability, obligation or expense in connection with the Assigned Interest, in each case under clauses (i), (ii) and (iii), which will result in any setoff, offset or reduction in payments or distributions (including the timing of payments or distributions) made to the Assignee in connection with the Assigned Interest.

1.5    Assignor has delivered to Assignee true and correct copies of all of the Transaction Documents and each of the additional documents set forth on Schedule I hereto. Except for the documents listed on Schedule I, to the best of Assignor's knowledge, there are no other documents with the Issuer or the Guarantor, or any of their respective Affiliates, to which Assignor is a party that materially or adversely affect the Assigned Interest.

FILED: NEW YORK COUNTY CLERK 02/15/2019 04:37 PM
NYSCEF DOC. NO. Case 1:19-cv-02519-AJN    Document 25-11    Filed 04/11/19    Page 29 of 48SCEF: 02/15/2019

INDEX NO. 651005/2019

2.    **Representations and Warranties of Assignee**

Assignee represents and warrants to Assignor as of the date hereof and as of the Effective Date that:

2.1    (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Noteholder under the Note Agreement, (ii) it is an Eligible Institution and is not an Ineligible Transferee, (iii) from and after the Effective Date, it shall be bound by the provisions of the Note Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Noteholder thereunder, and (iv) it has received a copy of the Note Agreement, together with copies of the most recent financial statements delivered pursuant to Section 5.04 thereof and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision; and agrees that (i) it will, independently and without reliance on the Administrative Agent, Assignor or any other Noteholder, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Finance Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Finance Documents are required to be performed by it as a Noteholder.

3.    **Payments**

From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest and other amounts) to Assignee.

4.    **General Provisions**

This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and permitted assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy or electronic mail shall be equally effective to the delivery of a manually executed counterpart of this Assignment. THIS ASSIGNMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

5.    **Indemnities**

5.1    Assignee shall indemnify, defend, and hold Assignor and its officers, directors, agents, partners, members, controlling entities, and employees (collectively, "Assignor Indemnitees") harmless from and against any liability, claim, cost, loss, judgment, damage, expense or disbursement (including reasonable attorneys' fees and expenses) that any Assignor Indemnitee incurs or suffers as a result of or arising out of a breach of any of Assignee's representations, warranties, covenants or agreements in this Assignment up to a maximum amount equal to the Purchase Price.

5.2    Assignor shall indemnify, defend, and hold the Assignee and its officers, directors, agents, partners, members, controlling entities, and employees (collectively, "Assignee Indemnitees") harmless from and against any liability, claim, cost, loss, judgment, damage,

expense or disbursement (including reasonable attorneys' fees and expenses) that any Assignee Indemnitee incurs or suffers as a result of or arising out of a breach of any of Assignor's representations, warranties, covenants or agreements in this Assignment up to a maximum amount equal to the Purchase Price.

6. **Costs and Expenses**

Assignee agrees (i) to pay and reimburse Assignor and any other Assignor Indemnitee for, all reasonable third-party out-of-pocket costs, expenses and fees actually incurred by Assignor or such Assignor Indemnitee (including reasonable attorney's fees and expenses) and (ii) to pay, indemnify, and hold the Assignor and any other Assignor Indemnitee harmless from and against any and all other liabilities, claims, costs, losses, judgments, damages, expenses or disbursements of any kind or nature whatsoever, with respect to or arising from or in connection with (x) Assignee's execution, enforcement or collection actions, legal remedies, or efforts under the Note Agreement, the Notes or the Assigned Interest (including in connection with any litigation, arbitration, insolvency, bankruptcy, moratorium or reorganization procedures, whether in or out-of-court, involving the Assignee (or any future successors or assigns of the Assignee) and the Issuer and/or the Guarantor) or (y) any action taken by Assignor at the prior written direction of Assignee (including, without limitation, any actions taken by Assignee in connection with the terms set forth in Section 10 hereof) (including reasonable attorney's fees and expenses). Assignee shall pay Assignor or such Assignor Indemnitee, by no later than five (5) business days from the date of receipt of the relevant written request from Assignor or the relevant Assignor Indemnitee, for any such costs, expenses and fees.

7. **As-Is Basis**

WITH RESPECT TO THE ASSIGNED INTEREST, EXCEPT FOR ASSIGNOR'S REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS IN THIS ASSIGNMENT, SUCH ASSIGNED INTEREST IS HEREBY SOLD, ASSIGNED, TRANSFERRED AND CONVEYED TO THE ASSIGNEE ON AN "AS IS", "WHERE IS" BASIS, WITHOUT ANY REPRESENTATION, WARRANTY, PROMISE, PROJECTION OR PREDICTION WHATSOEVER WITH RESPECT TO SUCH ASSIGNED INTEREST, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW. ASSIGNEE FURTHER ACKNOWLEDGES THAT IT IS AWARE OF THE CURRENT NON-PAYMENTS UNDER THE NOTE AGREEMENT IN CONNECTION WITH THE ASSIGNED INTEREST.

8. **Confidentiality**

Each of Assignor and Assignee agrees that, without prior consent of the other party, it shall not disclose the contents of this Assignment (including the Purchase Price) to any government, governmental agency, authority, court or other tribunal (collectively, "Governmental Authority") or any or any individual, partnership, corporation, limited liability company, association, estate, trust, business trust, fund, investment account or other entity (each, including a Governmental Authority, an "Entity"), except that either party may make any such disclosure (i) if required to do so by any law, court, or regulation, (ii) to implement and enforce this Assignment, (iii) to any banking, regulatory, or examining authority, (iv) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in such party incurring a liability to any other entity, (v) to its respective affiliates, and its and their directors, officers, members, employees and professional advisors (including legal counsel) or any other service providers as may be

necessary in the ordinary course of business, or (vi) solely with the Purchase Price redacted, to the extent necessary to effect a subsequent transfer of the Assigned Interest.

9.    **Distributions**

It is understood that any Distributions in connection with the Assigned Interest made on or after the Effective Date belong to Assignee. If at any time on or after the Effective Date, Assignor receives a Distribution, Assignor shall (i) accept and hold the Distribution for the account and sole benefit of Assignee, (ii) have no equitable or beneficial interest in the Distribution and (iii) promptly deliver the Distribution to Assignee, and in no event later than five (5) business days of Assignor's receipt thereof.

**10.    Further Assurances**

Assignor agrees to execute and deliver, or cause to be executed and delivered, any further documents or acknowledgements as Assignee may reasonably request (at Assignee's sole cost and expense) that may be commercially necessary for Assignee to establish that Assignee is the owner of the Assigned Interest or entitled to receive directly any Distributions.

*[remainder of page intentionally left blank]*

**Schedule I**

### LIST OF TRANSACTION DOCUMENTS

1. Note Agreement, dated as of March 27, 2015, by and among Petróleos de Venezuela, S.A. as Issuer, PDVSA Petróleo, S.A., as Guarantor, the Noteholders that are a party thereto from time to time and GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as Administrative Agent.

2. Note R-2 dated March 27, 2015, in the original outstanding principal amount of $131,855,116.31, issued under the abovementioned Note Agreement.

3. Note R-3 dated March 27, 2015, in the original outstanding principal amount of $124,700,488.54, issued under the abovementioned Note Agreement.

# EXHIBIT F

## Anna Deknatel

| | |
|---|---|
| **From:** | Wallitt, Daniel (GE Capital) <Daniel.Wallitt@ge.com> |
| **Sent:** | Friday, January 25, 2019 4:48 PM |
| **To:** | EMMY HERRERA; LOVERALR@PDVSA.COM |
| **Cc:** | 'CARLOS COELLO'; 'diazwd@pdvsa.com'; Friel, Gerald (GE Capital); 'graffet@pdvsa.com'; Weidner, Matthew L (GE Capital); 'medinait@pdvsa.com'; 'ROSA MOTA'; Ho, Quang (GE Capital); Martyn, Sean (BHGE); JORGE CHIRINOS; CLAUDIA PEREZ; MARITZA VALLEJO; ROSIRIS CONTRERAS; apontels@pdvsa.com; lopezfmx@pdvsa.com; carpiojm@pdvsa.com; navasmu@pdvsa.com; GUZMANRU@PDVSA.COM; ruzzai@pdvsa.com; manriqueej@pdvsa.com; aularvs@pdvsa.com; bolivarmj@pdvsa.com; espanaam@pdvsa.com; orsonie@pdvsa.com; graffet@pdvsa.com; ruzzai@pdvsa.com; PATRICIA LUGO; MARVIN PINTO; CARLOS COELLO; ANABELLA Rivas; herreraev@pdvsa.com; ferrern@pdvsa.com; ROSA MOTA; Landazabal, Carlos (GE Global); Hands, Ricardo (BHGE); Romero, Jose D (BHGE); Friel, Gerald (GE Capital); Weidner, Matthew L (GE Capital); Ho, Quang (GE Capital); aularvs@pdvsa.com; ortegaae@pdvsa.com; bolivarrs@pdvsa.com; ruzzai@pdvsa.com; manriqueej@pdvsa.com |
| **Subject:** | GENEREAL ELECTRIC - PDVSA I |
| **Attachments:** | PDVSA I- Notice of Resignation as Agent.pdf; PDVSA I- Notice of Acceptance and Appointment as Agent.pdf; PDVSA I- Notice of Assignment.pdf |

All, please find the following attached files relating to the Note dated March 27, 2015:

- Notice of Resignation as Agent
- Notice of Acceptance & Appointment as Agent
- Notice of Assignment

**Dan Wallitt**
GE Capital
901 Main Avenue
Norwalk, CT 06851
T: 203-229-8616
M: 917-696-6588
daniel.wallitt@ge.com

## ASSIGNMENT AND ACCEPTANCE

This Assignment and Acceptance (this "Assignment") is dated as of January 25, 2019 and is entered into by and between **GE Capital EFS Financing, Inc.** (as successor to General Electric Capital Corporation) (the "Assignor") and **Red Tree Investments, LLC** (the "Assignee"). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Note Agreement identified below (the "Note Agreement"), receipt of a copy of which is hereby acknowledged by Assignee. The Standard Terms and Conditions set forth in Annex 1 attached hereto (the "Standard Terms and Conditions") are hereby agreed to and incorporated herein by reference and made a part of this Assignment as if set forth herein in full.

On the Effective Date (as defined below), Assignor hereby irrevocably sells and assigns to Assignee, and Assignee hereby irrevocably purchases and assumes from Assignor, subject to and in accordance with the Standard Terms and Conditions and the Finance Documents, all of Assignor's rights, title, and interest in, to and under the Notes (as defined below) and, to the extent related thereto, all of the following: (i) the Note Agreement and the other Transaction Documents, and any other agreements, documents, guarantees and instruments delivered pursuant thereto or for the benefit of the Noteholders; and (ii) all principal, interest, claims, payments, proceeds, distributions of any kind arising from the foregoing ("Distributions") (clauses (i) and (ii) collectively, the "Assigned Interest").

Prior to the Effective Date and as conditions precedent to the transaction contemplated by this Assignment: (i) Assignor and Assignee shall each execute and deliver into escrow counterpart copies of this Assignment, (ii) Assignor shall execute and deliver into escrow Assignor's resignation as Administrative Agent under the Note Agreement (the "Agent's Resignation"); (iii) Assignee shall execute and deliver into escrow Assignee's acceptance of the Agent's Resignation and the appointment and acceptance of Assignee as the successor Administrative Agent under the Note Agreement; (iv) Assignor shall deliver into escrow the original Note R-2 referenced below as part of the Notes, together with a note power (endorsed in blank) and together with a medallion signature guarantee affixed thereto and (v) Assignor shall execute and deliver into escrow written notice of the assignment of the Notes by Assignor to Assignee and confirmation of the Effective Date for this Assignment (with the Effective Date set forth therein and herein upon receipt of the Purchase Price) (the "Transfer Notice"). Upon satisfaction of the execution and delivery of each of the foregoing documents (collectively and together with this Assignment, the "Assignment Documents") by the parties hereto (as the case may be), Assignee shall, within one (1) business day, pay Assignor the Purchase Price (defined below) in immediately available funds to Assignor's account designated below (as the same may be subsequently amended or updated by Assignor).

The sale and assignment of the Assigned Interest contemplated hereby shall become effective on the "Effective Date", which shall be the date on which Assignor shall have received the Purchase Price, in which event the Assignment Documents may be delivered from escrow to Assignee with copies thereof delivered to Assignor.

On the Effective Date, Assignor agrees to deliver to the Issuer, or Issuer's representatives, as the case may be, and the Administrative Agent the Transfer Notice (with a copy of such written notice sent to Assignee).

Assignor's Account:

GE Capital EFS Financing, Inc.
Deutsche Bank Trust Company America
60 Wall Street, 28th, New York, NY 10005
ABA# 021-001-033

Account No: 50278772
Account Name: GECC EFS/T&I Depository Account

| | | |
|---|---|---|
| (a) | Assignor: | GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) |
| (b) | Assignee: | Red Tree Investments, LLC |
| (c) | Issuer: | Petróleos de Venezuela, S.A. |
| (d) | Existing Administrative Agent: | GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) |
| (e) | Note Agreement: | The Note Agreement, dated as of March 27, 2015 (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms), by and among Petróleos de Venezuela, S.A. as Issuer, PDVSA Petróleo, S.A., as Guarantor, the Noteholders that are a party thereto from time to time and GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as Administrative Agent. |
| (f) | Notes: | Aggregate outstanding principal amount of $10,987,926.35, together with accrued and unpaid interest, on Note R-2 dated March 27, 2015, in the original outstanding principal amount of $131,855,116.31. |
| | | Aggregate outstanding principal amount of $10,391,707.36, together with accrued and unpaid interest, on Note R-3 dated March 27, 2015, in the original outstanding principal amount of $124,700,488.54. |
| (g) | Purchase Price: | Such amount set forth in the purchase price letter by and between the Assignor and the Assignee. |
| (h) | Assignee's Account for Payments: | ABA No.: 021000018<br>Beneficiary Account No: 8901212318<br>Beneficiary Account Name:<br>Wells Fargo Securities, LLC<br>FFC Account No.: 2MA01252<br>FFC Account Name: Red Tree Investments, LLC |
| (i) | Effective Date: | January 25, 2019 |

*[signature page follows]*

The terms set forth in this Assignment are hereby agreed to:

**ASSIGNOR:**
GE CAPITAL EFS FINANCING, INC.

By: _____

Name: Daniel Wallitt
Title: Authorized Signatory

**ASSIGNEE:**
RED TREE INVESTMENTS, LLC

By: _____
Name: Lauren Murray
Title: Authorized Signatory

Assignee's Notice Information:

Red Tree Investments, LLC
c/o Daniel Salinas-Serrano
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
202-905-4668 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielsalinas@quinnemanuel.com

The terms set forth in this Assignment are hereby agreed to:

ASSIGNOR:
GE CAPITAL EFS FINANCING, INC.

By: _____
Name:
Title:

ASSIGNEE:
RED TREE INVESTMENTS, LLC

By: _____
Name: Lauren Murray
Title: Authorized Signatory

Assignee's Notice Information:

Red Tree Investments, LLC
c/o Daniel Salinas-Serrano
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
202-905-4668 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielsalinas@quinnemanuel.com

ANNEX 1

## NOTE AGREEMENT, DATED AS OF MARCH 27, 2015, BY AND AMONG PETRÓLEOS DE VENEZUELA, S.A., AS ISSUER, PDVSA PETRÓLEO, S.A., AS GUARANTOR, THE NOTEHOLDERS THAT ARE A PARTY THERETO FROM TIME TO TIME AND GE CAPITAL EFS FINANCING, INC. (AS SUCCESSOR TO GENERAL ELECTRIC CAPITAL CORPORATION), AS ADMINISTRATIVE AGENT

### STANDARD TERMS AND CONDITIONS FOR ASSIGNMENT AND ACCEPTANCE

1.     **Representations and Warranties of Assignor**

Assignor represents and warrants to Assignee as of the date hereof and as of the Effective Date that:

1.1     (i) it, acting on behalf of itself and its Affiliates, is the sole legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance, pledge, security interest, setoff or other adverse claim, and (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby; and assumes no responsibility with respect to (w) any statements, warranties or representations made in or in connection with the Finance Documents except for any statements, warranties, representations expressly made by Assignor in any Finance Document or this Assignment, (x) the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Finance Documents, or any collateral thereunder, (y) the financial condition of the Issuer, the Guarantor, any of the Subsidiaries or any of their respective Affiliates in respect of any Finance Document or (z) the performance or observance by the Issuer, the Guarantor, any of the Subsidiaries or any of their respective Affiliates of any of their respective obligations under any Finance Document.

1.3     The aggregate outstanding principal amount of the R-2 Note is $10,987,926.35 and the original outstanding principal amount of the R-2 Note is $131,855,116.31. There is no funding obligation of any kind in respect of the R-2 Note. The aggregate outstanding principal amount of the R-3 Note is $10,391,707.36 and the original outstanding principal amount of the R-3 Note is $124,700,488.54. There is no funding obligation of any kind in respect of the R-3 Note.

1.4     Assignor (i) has not, on or after March 31, 2018, received any Distributions from the Issuer or the Guarantor, or any of their respective Affiliates, in connection with the Assigned Interest, (ii) has not entered into any agreement with the Issuer or an Affiliate of the Issuer to make loans to or otherwise extend credit to or for the benefit of the Issuer or an Affiliate of the Issuer or (iii) does not have any unpaid or outstanding liability, obligation or expense in connection with the Assigned Interest, in each case under clauses (i), (ii) and (iii), which will result in any setoff, offset or reduction in payments or distributions (including the timing of payments or distributions) made to the Assignee in connection with the Assigned Interest.

1.5     Assignor has delivered to Assignee true and correct copies of all of the Transaction Documents and each of the additional documents set forth on Schedule I hereto. Except for the documents listed on Schedule I, to the best of Assignor's knowledge, there are no other documents with the Issuer or the Guarantor, or any of their respective Affiliates, to which Assignor is a party that materially or adversely affect the Assigned Interest.

2.   **Representations and Warranties of Assignee**

Assignee represents and warrants to Assignor as of the date hereof and as of the Effective Date that:

2.1   (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and to consummate the transactions contemplated hereby and to become a Noteholder under the Note Agreement, (ii) it is an Eligible Institution and is not an Ineligible Transferee, (iii) from and after the Effective Date, it shall be bound by the provisions of the Note Agreement and, to the extent of the Assigned Interest, shall have the obligations of a Noteholder thereunder, and (iv) it has received a copy of the Note Agreement, together with copies of the most recent financial statements delivered pursuant to Section 5.04 thereof and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and to purchase the Assigned Interest on the basis of which it has made such analysis and decision; and agrees that (i) it will, independently and without reliance on the Administrative Agent, Assignor or any other Noteholder, and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Finance Documents, and (ii) it will perform in accordance with their terms all of the obligations which by the terms of the Finance Documents are required to be performed by it as a Noteholder.

3.   **Payments**

From and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest and other amounts) to Assignee.

4.   **General Provisions**

This Assignment shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and permitted assigns. This Assignment may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment by telecopy or electronic mail shall be equally effective to the delivery of a manually executed counterpart of this Assignment. THIS ASSIGNMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (INCLUDING SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES.

5.   **Indemnities**

5.1   Assignee shall indemnify, defend, and hold Assignor and its officers, directors, agents, partners, members, controlling entities, and employees (collectively, "Assignor Indemnitees") harmless from and against any liability, claim, cost, loss, judgment, damage, expense or disbursement (including reasonable attorneys' fees and expenses) that any Assignor Indemnitee incurs or suffers as a result of or arising out of a breach of any of Assignee's representations, warranties, covenants or agreements in this Assignment up to a maximum amount equal to the Purchase Price.

5.2   Assignor shall indemnify, defend, and hold the Assignee and its officers, directors, agents, partners, members, controlling entities, and employees (collectively, "Assignee Indemnitees") harmless from and against any liability, claim, cost, loss, judgment, damage,

expense or disbursement (including reasonable attorneys' fees and expenses) that any Assignee Indemnitee incurs or suffers as a result of or arising out of a breach of any of Assignor's representations, warranties, covenants or agreements in this Assignment up to a maximum amount equal to the Purchase Price.

6.    **Costs and Expenses**

Assignee agrees (i) to pay and reimburse Assignor and any other Assignor Indemnitee for, all reasonable third-party out-of-pocket costs, expenses and fees actually incurred by Assignor or such Assignor Indemnitee (including reasonable attorney's fees and expenses) and (ii) to pay, indemnify, and hold the Assignor and any other Assignor Indemnitee harmless from and against any and all other liabilities, claims, costs, losses, judgments, damages, expenses or disbursements of any kind or nature whatsoever, with respect to or arising from or in connection with (x) Assignee's execution, enforcement or collection actions, legal remedies, or efforts under the Note Agreement, the Notes or the Assigned Interest (including in connection with any litigation, arbitration, insolvency, bankruptcy, moratorium or reorganization procedures, whether in or out-of-court, involving the Assignee (or any future successors or assigns of the Assignee) and the Issuer and/or the Guarantor) or (y) any action taken by Assignor at the prior written direction of Assignee (including, without limitation, any actions taken by Assignee in connection with the terms set forth in Section 10 hereof) (including reasonable attorney's fees and expenses). Assignee shall pay Assignor or such Assignor Indemnitee, by no later than five (5) business days from the date of receipt of the relevant written request from Assignor or the relevant Assignor Indemnitee, for any such costs, expenses and fees.

7.    **As-Is Basis**

WITH RESPECT TO THE ASSIGNED INTEREST, EXCEPT FOR ASSIGNOR'S REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS IN THIS ASSIGNMENT, SUCH ASSIGNED INTEREST IS HEREBY SOLD, ASSIGNED, TRANSFERRED AND CONVEYED TO THE ASSIGNEE ON AN "AS IS", "WHERE IS" BASIS, WITHOUT ANY REPRESENTATION, WARRANTY, PROMISE, PROJECTION OR PREDICTION WHATSOEVER WITH RESPECT TO SUCH ASSIGNED INTEREST, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW. ASSIGNEE FURTHER ACKNOWLEDGES THAT IT IS AWARE OF THE CURRENT NON-PAYMENTS UNDER THE NOTE AGREEMENT IN CONNECTION WITH THE ASSIGNED INTEREST.

**8.    Confidentiality**

Each of Assignor and Assignee agrees that, without prior consent of the other party, it shall not disclose the contents of this Assignment (including the Purchase Price) to any government, governmental agency, authority, court or other tribunal (collectively, "Governmental Authority") or any or any individual, partnership, corporation, limited liability company, association, estate, trust, business trust, fund, investment account or other entity (each, including a Governmental Authority, an "Entity"), except that either party may make any such disclosure (i) if required to do so by any law, court, or regulation, (ii) to implement and enforce this Assignment, (iii) to any banking, regulatory, or examining authority, (iv) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in such party incurring a liability to any other entity, (v) to its respective affiliates, and its and their directors, officers, members, employees and professional advisors (including legal counsel) or any other service providers as may be

necessary in the ordinary course of business, or (vi) solely with the Purchase Price redacted, to the extent necessary to effect a subsequent transfer of the Assigned Interest.

9.    **Distributions**

It is understood that any Distributions in connection with the Assigned Interest made on or after the Effective Date belong to Assignee. If at any time on or after the Effective Date, Assignor receives a Distribution, Assignor shall (i) accept and hold the Distribution for the account and sole benefit of Assignee, (ii) have no equitable or beneficial interest in the Distribution and (iii) promptly deliver the Distribution to Assignee, and in no event later than five (5) business days of Assignor's receipt thereof.

10.    **Further Assurances**

Assignor agrees to execute and deliver, or cause to be executed and delivered, any further documents or acknowledgements as Assignee may reasonably request (at Assignee's sole cost and expense) that may be commercially necessary for Assignee to establish that Assignee is the owner of the Assigned Interest or entitled to receive directly any Distributions.

*[remainder of page intentionally left blank]*

**Schedule I**

### LIST OF TRANSACTION DOCUMENTS

1. Note Agreement, dated as of March 27, 2015, by and among Petróleos de Venezuela, S.A. as Issuer, PDVSA Petróleo, S.A., as Guarantor, the Noteholders that are a party thereto from time to time and GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as Administrative Agent.

2. Note R-2 dated March 27, 2015, in the original outstanding principal amount of \$131,855,116.31, issued under the abovementioned Note Agreement.

3. Note R-3 dated March 27, 2015, in the original outstanding principal amount of \$124,700,488.54, issued under the abovementioned Note Agreement.

**GE CAPITAL EFS FINANCING INC.**
**(as successor to General Electric Capital Corporation)**

January 25, 2019

Messrs.

**Red Tree Investments, LLC (as Noteholder)**
c/o Daniel Salinas-Serrano
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
202-905-4668 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielsalinas@quinnemanuel.com

**Petróleos de Venezuela, S.A.** (as Issuer)
La Campiña
Avenida Libertador
Calle El Empalme
Edificio Petróleos de Venezuela, Torre Este, Piso 8
Caracas, Venezuela
Attn:    Iliana Ruzza, Emir Manrique, Víctor Aular, Abraham Ortega, Anabella Rivas and Edoardo Orsoni

**Re: Notice of resignation as Administrative Agent under Note Agreement**

Dear Sirs,

Reference is made to that certain Note Agreement, dated as of March 27, 2015 (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms, the "Note Agreement"), originally by and among Petróleos de Venezuela, S.A., a corporation (*sociedad anónima*) organized under the laws of the Bolivarian Republic of Venezuela as issuer, PDVSA Petróleo, S.A. a corporation (*sociedad anónima*) organized under the laws of the Bolivarian Republic of Venezuela as guarantor, GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), a Delaware corporation, as initial noteholder, GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), a Delaware corporation, as administrative agent (in such capacity, the "Administrative Agent"), and Union Capital Group, as lead arranger. Capitalized terms used but not defined in this notice have the meanings assigned to them in the Note Agreement.

We hereby formally give you notice of our resignation as Administrative Agent under such Note Agreement, in accordance with Article VIII of the Note Agreement.

This resignation is made as part of a single transaction along with the following separate actions, which are taking place and shall become effective on the date hereof: (i) immediately prior to the execution of this notice of resignation, the sale and assignment of all of the interest in and to GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation)'s rights and obligations under the Note Agreement, the other Transaction Documents and any other agreements, documents or instruments delivered pursuant thereto or for the benefit of the Noteholders relating thereto, to Red Tree Investments, LLC; and (ii) immediately after the execution of this notice of resignation, the acceptance of this resignation and the appointment of a successor Administrative Agent under the Note Agreement by the

1

KL2 3108743.2

Required Noteholders, and the acceptance of its appointment as successor Administrative Agent under the Note Agreement, by such successor Administrative Agent.

As a result of the foregoing, our resignation as Administrative Agent under such Note Agreement is effective immediately as of the date hereof.

Yours truly,

**GE Capital EFS Financing Inc.**
**(as successor to General Electric Capital Corporation)**

Authorized Signatory

2

## RED TREE INVESTMENTS, LLC

January 25, 2019

Messrs.

**Petróleos de Venezuela, S.A.** (as Issuer)
La Campiña
Avenida Libertador
Calle El Empalme
Edificio Petróleos de Venezuela, Torre Este, Piso 8
Caracas, Venezuela
Attn:     Iliana Ruzza, Emir Manrique, Víctor Aular, Abraham Ortega, Anabella Rivas and Edoardo Orsoni

**GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation)**
(as retiring Administrative Agent)
901 Main Avenue
Norwalk, CT 06851
United States of America
Atn:     Portfolio Manager

### Re: Notice of acceptance and appointment of successor Administrative Agent under Note Agreement

Dear Sirs,

Reference is made to that certain Note Agreement, dated as of March 27, 2015 (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms, the "Note Agreement"), originally by and among Petróleos de Venezuela, S.A., a corporation (*sociedad anónima*) organized under the laws of the Bolivarian Republic of Venezuela as issuer, PDVSA Petróleo, S.A. a corporation (*sociedad anónima*) organized under the laws of the Bolivarian Republic of Venezuela as guarantor, GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), a Delaware corporation, as initial noteholder, GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), a Delaware corporation, as administrative agent, and Union Capital Group, as lead arranger. Capitalized terms used but not defined in this notice have the meanings assigned to them in the Note Agreement.

We hereby confirm receipt of the notice of resignation of GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) as Administrative Agent under such Note Agreement, in accordance with Article VIII of the Note Agreement, as per the notice of resignation dated the date hereof and delivered to us on the date hereof.

We hereby accept the resignation of GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) as Administrative Agent under such Note Agreement and formally notify you about our acceptance thereof, effective immediately. We hereby relieve, release and discharge GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation) from all its duties and obligations as Administrative Agent set forth in the Note Agreement, effective immediately as of the date hereof.

As a result of the foregoing, we hereby appoint Red Tree Investments, LLC as successor Administrative Agent under such Note Agreement, in accordance with Article VIII of the Note Agreement, effective immediately as of the date hereof.

1

KL2 3108752.1

Based on the above, Red Tree Investments, LLC shall be the Administrative Agent under the Note Agreement for all purposes effective immediately from the date hereof, and all references to the Administrative Agent in the Note Agreement and/or the Notes shall be references to Red Tree Investments, LLC, effective immediately from the date hereof.

This acceptance and appointment is made as part of a single transaction along with the following separate actions, which are taking place and shall become effective on the date hereof: (i) immediately prior to the execution of this notice of acceptance and appointment and to the execution of the mentioned notice of resignation, the sale and assignment of all of the interest in and to GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation)'s rights and obligations under the Note Agreement, the other Transaction Documents and any other agreements, documents or instruments delivered pursuant thereto or for the benefit of the Noteholders relating thereto, to Red Tree Investments, LLC; and (ii) concurrently with the execution of this notice of acceptance and appointment, the resignation of GE Capital EFS Financing, Inc. (as successor to General Electric Capital Corporation), as Administrative Agent under the Note Agreement.

Yours truly,

RED TREE INVESTMENTS, LLC

Authorized Signatory

We hereby confirm and accept our appointment as Administrative Agent under the Note Agreement for all purposes effective immediately from the date hereof, on the terms set forth herein above.

We hereby provide our account details as Administrative Agent under the Note Agreement, for purposes of amending and updating Schedule 2.08 thereof accordingly:

ABA # 021000018
Beneficiary Account No: 8901212318
Beneficiary Account Name: WELLS FARGO SECURITIES, LLC
FFC Account No: 2MA01252
FFC Account Name: Red Tree Investments, LLC

Furthermore, we hereby provide our address and details for notices and other communications to us as Administrative Agent under the Note Agreement, for purposes of amending and updating Sections 9.01(b) and 2.08 thereof accordingly:

Red Tree Investments, LLC
c/o Daniel Salinas-Serrano
Quinn Emanuel Urquhart & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
202-905-4668 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
danielsalinas@quinnemanuel.com

2

Yours truly,

RED TREE INVESTMENTS, LLC

Authorized Signatory

KL2 3108752.1