UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RED TREE INVESTMENTS, LLC,<br><br>        Plaintiff,<br><br>    -against-<br><br>PETRÓLEOS DE VENEZUELA, S.A. and<br>PDVSA PETRÓLEO, S.A.,<br><br>       Defendants. | Docket No.: 1:19-cv-002519<br>(related to 1:19-cv-002523) |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR ADDITIONAL STAY

HOGAN LOVELLS US LLP
  Dennis H. Tracey, III
  Robin L. Muir
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.muir@hoganlovells.com

*Counsel for Defendants Petróleos de
Venezuela, S.A. and PDVSA Petróleo,
S.A*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................2

ARGUMENT ....................................................................................................................3

     I.     Defendants' Interests and the Judicial Interest in Favor of Resolving
           Cases on their Merits Continue to Weigh in Favor of a Stay for an
           Additional 120 Days. ...........................................................................................3

     II.    The Unprecedented Economic and Humanitarian Crisis in Venezuela
           Weighs in Favor of a Stay. ..................................................................................5

     III.   Red Tree Fails to Demonstrate Any Undue Prejudice that Outweighs
           these Substantial Interests. ..................................................................................7

CONCLUSION...............................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Maintenance Corp. v. Local No. 32B-32J, Service Employees, Internat'l Union*,
No. 79 C 3835, 1980 WL 2056 (S.D.N.Y. Jan. 31, 1980)........................................................9

*Brown v. Ashcroft*,
360 F.3d 346 (2d Cir. 2004) ....................................................................................................3

*Crystallex Internat'l Corp. v. Bolivarian Republic of Venzuela*,
333 F. Supp. 3d 380 (D. Del. 2018) ........................................................................................9

*Delgado v. NJ Transit Rail Operations, Inc.*,
No. 1:18-cv-02079 (SDA), 2019 WL 697289 (S.D.N.Y. Feb. 20, 2019) ...............................7

*Landis v. N. Am. Co.*,
299 U.S. 248, 57 S. Ct. 163 (1936) ........................................................................................3

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Titeflex Corp.*,
07 Civ. 2609 (LAK)(FM), 2008 WL 11396745 (S.D.N.Y. March 12, 2008) ........................7

*Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*,
87 F. Supp. 3d 463 (S.D.N.Y. 2015) .......................................................................................3

*Royal Park Invs. SA/NV v. Bank of Am. Corp.*,
941 F. Supp. 2d 367 (S.D.N.Y. 2013) .....................................................................................3

**Other Authorities**

Organization of American States, Press Release, OAS Report on Venezuelan
Migrants and Refugees: "An Unprecedented Crisis in the Region" (Mar. 8,
2019), available at https://www.oas.org/en/media_center/press_release.asp
?sCodigo=E-009/19................................................................................................................5

Ricardo Hausmann, "Understanding Venezuela's collapse," The Harvard Gazette
(Feb. 12, 2019), available at https://news.harvard.edu/gazette/story/2019/02/
harvard-expert-tries-to-make-sense-of-venezuelas-collapse ..................................................5

The White House, President Donald J. Trump Stands for Democracy in
Venezuela (May 1, 2019), available at https://www.whitehouse.gov/briefings-
statements/president-donald-j-trump-stands-democracy-venezuela ........................................6

U.S. Dep't of the Treasury, Press Release, Treasury Sanctions Governors of
Venezuelan States Aligned with Maduro (Feb. 25, 2019), available at
https://home.treasury.gov/news/press-releases/sm616............................................................6

Defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo") (together, "Defendants") respectfully submit this memorandum in support of their motion to stay all proceedings for an additional 120 days.

## PRELIMINARY STATEMENT

A stay of all proceedings for an additional 120 days is necessary to give Defendants time to access the relevant records, information, and personnel, as required to defend themselves against Red Tree's claims. As this Court recognized when granting Defendants' motion for a stay for an initial 120 days, Defendants have a "substantial interest in securing access to relevant facts and personnel." (Dkt. No. 33.) The Guaidó government – which is the only legitimate government of Venezuela and the only government authorized to respond to the claims against Defendants – does not yet have full access to the personnel and documents of the Venezuelan government and its instrumentalities. The illegitimate Maduro regime has unlawfully maintained substantial control of the operation of the Venezuelan government and government-owned entities, including PDVSA and Petróleo in Venezuela. As a result, Defendants remain unable to access the documents and information relevant to Red Tree's claims, despite their continued efforts.

A stay is also necessary to protect the interests of the people of Venezuela. Venezuela is facing an unparalleled complex humanitarian emergency. The requested stay will provide the Guaidó administration time to address the country's continuing political crisis and economic collapse.

For these reasons, Defendants respectfully submit that this Court should extend the stay for an additional 120 days or, in the alternative, defer consideration of the pending summary judgment motion in order to allow Defendants an opportunity to take discovery of Red Tree and

relevant non-party witnesses in order to attempt to obtain information necessary to defend this matter on the merits.

## BACKGROUND

Plaintiff Red Tree Investments, LLC commenced this action by filing a motion for summary judgment in lieu of a complaint on February 15, 2019 in the Supreme Court of the State of New York, New York County.  (Dkt. No. 3.)  Defendants thereafter removed the action to this Court.  (Dkt. No. 1.)

In March 2019, Defendants moved for a stay of all proceedings in light of the political uncertainty in Venezuela.  (Dkt. Nos. 9-11.)  By order dated May 6, 2019, this Court granted Defendants' motion for a stay and stayed the proceedings for a period of 120 days.  (Dkt. No. 33.)  This Court reasoned that Defendants' "substantial interest in securing access to relevant facts and personnel," and "[t]he judicial interest in favor of resolving cases on their merits" outweighed Red Tree's interests.  (*Id.*)

On August 8, 2019, before the 120 day stay period expired, Red Tree moved to lift the stay.  (Dkt. No. 36.)  Defendants opposed that motion on the grounds that Red Tree failed to demonstrate any non-speculative prejudice that outweighed their substantial interests that warranted the Court to modify its prior order, among other reasons.  (Dkt. No. 39.).

In its September 3, 2019 status report to the Court, Defendants explained that the circumstances that led the Court to grant its motion for a stay still existed and therefore requested that the stay be extended for an additional 120 days.  (Dkt. No. 42.)  Red Tree opposed Defendants' request to extend the stay and asked the Court to schedule a status conference to discuss its pending motion to lift the stay.  (Dkt. No. 44.)  On September 13, 2019, this Court

denied Red Tree's request for a status conference and set a briefing schedule for Defendants' motion for an additional 120 day stay.  (Dkt. No. 48.)

## ARGUMENT

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of its own docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936) (citations omitted).  "Courts considering stay applications must 'exercise [their] judgment' and 'weigh competing interests.'"  *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013) (citation omitted).  Courts in this Circuit consider five factors when deciding whether a stay is warranted: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."  *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 87 F. Supp. 3d 463, 471 (S.D.N.Y. 2015) (citations omitted).  Considering these factors, a stay of all proceedings for an additional 120 days is warranted.

## I.    Defendants' Interests and the Judicial Interest in Favor of Resolving Cases on their Merits Continue to Weigh in Favor of a Stay for an Additional 120 Days.

Defendants have a "substantial interest in securing access to relevant facts and personnel," (Dkt. No. 33), and a due process right to a meaningful opportunity to be heard.  *See Brown v. Ashcroft*, 360 F.3d 346, 350 (2d Cir. 2004) ("At the core of due process is the right to notice of the nature of the charges and a meaningful opportunity to be heard." (internal quotation marks and citation omitted)).  And, as acknowledged by this Court, "the judicial interest in favor of resolving cases on their merits also weighs in favor of granting a stay."  (Dkt. No. 33.)

Following the grant of the stay in May 2019, Defendants, through Special Attorney General José Ignacio Hernández González have continued their efforts to obtain relevant documents and information, despite the fact that the illegitimate Maduro regime has maintained substantial control of the operation of the Venezuelan government and government-owned entities, including PDVSA and Petróleo in Venezuela. (Hernández Decl. ¶¶ 6-7.)[1] Pursuant to his authority as Interim President, Juan Guaidó, by Presidential Decree N° 3 dated April 10, 2019, appointed an ad hoc Board of Directors of PDVSA with the authority, among other things, to represent PDVSA and Petróleo regarding its assets abroad. (*Id.* ¶ 9.)

Defendants have requested that the ad hoc Board of Directors of PDVSA provide counsel any documents and information relevant to this matter. (*Id.* ¶¶ 12-13.) In response, by letter dated, August 29, 2019, Luis A. Pacheco, the Chairman of the ad hoc Board of Directors of Petróleos de Venezuela S.A., confirmed that the ad hoc Board does not presently have access to documents and information related to the present dispute, and that they are located in the Caracas office of PDVSA, which remains in the control of the illegitimate Maduro administration. (*Id.* ¶ 14.) Mr. Pacheco agreed to contact Defendants as soon as the ad hoc Board gains access to the requested documents and information. (*Id.*) To date, Mr. Pacheco has not further contacted Defendants regarding their request. (*Id.* ¶ 15.)

Because Defendants remain unable to access the documents and personnel necessary to defend themselves against Red Tree's claims, despite their continued efforts, this Court should extend the stay for an additional 120 days. In the alternative, should this Court find that an additional stay is not warranted, Defendants respectfully request that the Court defer

---

[1] "Hernandez Decl." refers to the Declaration of José Ignacio Hernández González in Support of Defendants' Motion for Additional Stay, submitted herewith.

consideration of the pending summary judgment motion in order to allow Defendants an opportunity to take discovery of Red Tree and relevant non-party witnesses in order to attempt to obtain information necessary to defend this matter on the merits.

## II. The Unprecedented Economic and Humanitarian Crisis in Venezuela Weighs in Favor of a Stay.

A stay for an additional 120 days is also necessary to provide the Guaidó administration time to address the country's continuing humanitarian and political crisis and unparalleled economic collapse.  The gross domestic product in Venezuela has fallen by over fifty percent:

> That is double the size of the U.S. Great Depression. It's double the size of the Greek crisis. It's double the size of the economic collapse that occurred during the Spanish Civil War. It is something of really unique proportions. The consequence of that collapse is expressed in the fact that the minimum wage today is $6 a month. That means that the minimum wage does not buy two eggs a day. It buys something like 700 calories a day. It means that because you don't have the calories and the proteins and the medicines for 30 million people, people are losing weight. This has been measured at something like eight kilos a year on average — there is in that the stunting of children's growth.[2]

This collapse has trigged a massive migration crisis.  According to the General-Secretary of the Organization of American States, Mr. Luis Almagro: "with more than 3.4 million, Venezuelans are the second largest refugee population in the world, second only to Syria, which has been at war for 7 years.  And the forecasts indicate that by the end of 2019 the exodus will reach 5.4 million people."[3]

Based on the unprecedented economic and humanitarian crisis in Venezuela, the Guaidó government should be given time to address its claims in a global manner that best serves the

---

[2] Ricardo Hausmann, "Understanding Venezuela's collapse," The Harvard Gazette (Feb. 12, 2019), available at https://news.harvard.edu/gazette/story/2019/02/harvard-expert-tries-to-make-sense-of-venezuelas-collapse.

[3] Organization of American States, Press Release, OAS Report on Venezuelan Migrants and Refugees: "An Unprecedented Crisis in the Region" (Mar. 8, 2019), available at https://www.oas.org/en/media_center/press_release.asp?sCodigo=E-009/19.

interests of the Venezuelan people.  (Hernández Decl. ¶ 18.)  For this additional reason, this Court should extend the stay for an additional 120 days.

U.S. policy strongly supports the Interim Government's plans to alleviate the humanitarian emergency in Venezuela and to restore the country's democracy and economy.[4]  A temporary stay would further that policy because the ongoing lawsuits threaten Venezuela's ability to provide humanitarian relief and preserve strategic assets.

Long-standing U.S. policy also strongly supports orderly, consensual resolution of sovereign debt crises.[5]  An additional stay would further that policy goal as well, because the current raft of the U.S. proceedings seriously impairs the prospects for such a resolution.  A restructuring of Chávez/Maduro era legacy claims cannot proceed at this time because of the Maduro regime's stranglehold on the information and documentation regarding the claims, the pressing economic needs of the country, and the incidental effect of the sanctions necessary to dislodge the regime in effectively preventing U.S. persons from participating in a restructuring of

---

[4]  *See* U.S. Dep't of the Treasury, Press Release, Treasury Sanctions Governors of Venezuelan States Aligned with Maduro (Feb. 25, 2019), available at https://home.treasury.gov/news/press-releases/sm616 ("The United States fully supports the efforts of Interim President Juan Guaidó to address the endemic corruption, human rights abuses, and violent repression that has become the hallmark of the illegitimate Maduro regime . . . ."); The White House, President Donald J. Trump Stands for Democracy in Venezuela (May 1, 2019), available at https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-stands-democracy-venezuela/ (noting that the United States has committed itself to "rebuilding Venezuela's infrastructure and economy" and "supporting the effort to restore democracy and stability in Venezuela").

[5]  *See, e.g.*, Brief for the United States, *NML Capital Ltd.* v. *Republic of Argentina*, 2012 WL 1150791, at *7 (2d Cir. Apr. 4, 2012) (stating that "in those rare cases where a sovereign cannot meet its external obligations . . . the policy of the United States is that the orderly and consensual restructuring of sovereign debt . . . is the most appropriate response"); Statement of Interest of the United States at 4, *Allied Bank Int'l* v. *Banco Credito Agricola del Cartago*, No. 83-7714 (2d Cir. July 1984) (noting that "orderly [debt] resolution[s] [are] crucial to the stability and future growth of the world and the U.S. economy").

the country's debt without a license from the U.S. Treasury Department's Office of Foreign Asset Control ("OFAC").

In line with the policy, the Office of the Special Attorney General approved in July 2019 the *Guidelines for the Renegotiation of the Chavez/Maduro Era Legacy Public External Debt* (Dkt. No. 38-1), which established the framework for the orderly, consensual resolution of all the private claims against the Venezuelan public sector, including Red Tree's claims. An extension of the stay in this case will further that objective.

## III.    Red Tree Fails to Demonstrate Any Undue Prejudice that Outweighs these Substantial Interests.

Red Tree has not, and cannot, demonstrate any undue prejudice that outweighs the substantial interests that favor continuing the stay. *See Delgado v. NJ Transit Rail Operations, Inc.*, No. 1:18-cv-02079 (SDA), 2019 WL 697289, at *1 (S.D.N.Y. Feb. 20, 2019) ("In analyzing these factors on a case-by-case basis [when deciding a motion to stay proceedings], 'the basic goal is to avoid prejudice.'" (citation omitted)); *cf. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Titeflex Corp.*, 07 Civ. 2609 (LAK)(FM), 2008 WL 11396745, at *10 (S.D.N.Y. March 12, 2008) ("Indeed, the stay should entitle National Union to seek its vacatur at any time if it is able to show that continuance of the stay would lead to unfair prejudice." (citation omitted)).

In its motion to lift the stay, Red Tree argued: (1) that the stay was unduly prejudicing its rights because other creditors of Venezuela are "aggressively" pursuing judgments against PDVSA, which may potentially impair "Red Tree's ability to make effective the judgment it seeks through this action," and (2) that the Guaidó government's plan for restructuring Venezuela's debt will allegedly "prejudice Red Tree's rights by destroying its structural priority vis-à-vis creditors of Venezuela." (Dkt. No. 37.)

As discussed in Defendants' opposition to the motion to lift the stay,[6] (and summarized below), contrary to Red Tree's assertion, Red Tree failed to demonstrate any non-speculative prejudice that outweighs Defendants' substantial interests.

Red Tree's claim of undue prejudice based on other creditors' pursuit of judgments against PDVSA is baseless.  The recent activity in *Casa Express Corp. v. Bolivarian Republic of Venezuela* and *Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*, two of the cases referenced by Red Tree (Dkt. No. 37 at p. 4), does not support Red Tree's allegations of undue prejudice.  First, those cases do not even name PDVSA as a defendant, and relate to the entirely separate liability of the Republic of Venezuela on bonds issued by the Republic of Venezuela. *See Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 18-cv-11940, Dkt. No. 1 (S.D.N.Y. Dec. 18, 2018); *Pharo Gaia Fund Ltd. v. Bolivarian Republic of Venezuela*, No. 19-cv-03123, Dkt. No. 1-1 (S.D.N.Y. April 8, 2019).  Whatever the outcome may be in those cases, it has little bearing on Red Tree.  Moreover, in those cases, the Court has simply issued scheduling orders, which include briefing schedules for the defendants' prospective cross-motions for a stay of all proceedings.  *See Casa Express Corp.*, Dkt. No. 45 (S.D.N.Y. July 8, 2019); *Pharo Gaia Fund Ltd.*, Dkt. No. 25 (S.D.N.Y. July 8, 2019).  These orders make clear that no decision on the merits will be made in those cases until at least March 2020, when the stay motions have been fully briefed.

Red Tree's claim that a stay in this case will allow those plaintiffs to prejudice Red Tree's rights is not persuasive.  It assumes that the plaintiffs will succeed on the merits; that the plaintiffs will then seek to assert alter ego or other claims against PDVSA and seek to attach

---

[6] For brevity, Defendants incorporate by reference the arguments set forth in its opposition to Red Tree's motion to lift the stay (Dkt. No. 39) as if stated herein in full.

property of PDVSA, that enforcement will deplete PDVSA's assets so significantly that Red Tree will be unable to enforce any judgment that it may obtain in this action – and that an addition 120 days will make any difference is rank speculation. Such speculative arguments are insufficient to satisfy Red Tree's burden of showing undue prejudice by the stay, and is outweighed by the definitive prejudice to Defendants if the stay is lifted. *See Allied Maintenance Corp. v. Local No. 32B-32J, Service Employees, Internat'l Union, AFL-CIO*, No. 79 C 3835, 1980 WL 2056, at \*3 (S.D.N.Y. Jan. 31, 1980) ("Under the circumstances, since Allied has shown good cause to grant the stay, and the Union has established only a speculative possibility of prejudice, the motion is granted.").

The claim in *OI European Group B.V. v. Bolivarian Republic of Venezuela* is even further afield. In that case, the plaintiff obtained an award against the Republic of Venezuela more than 4 years ago, and filed its lawsuit seeking enforcement of the award three years ago on July 27, 2016. *See OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 16-CV-153, Dkt. No. 85 at p. 4 (D.D.C. July 25, 2019). Red Tree is not remotely in a similar position. Red Tree acquired claims belonging to GE Capital on January 25, 2019. It filed the present case 20 days later on February 15, 2019. Red Tree's claims, which arose years after OI European's, were never contemporaneous claims, and denying PDVSA a short stay in the interests of due process will not meaningfully affect Red Tree's rights in relation to OI European's.

*Crystallex International Corp. v. Bolivarian Republic of Venezuela* is similar. Crystallex's gold mine was expropriated in 2011, and it obtained an arbitration award against the Republic in April 2016. *See Crystallex Internat'l Corp. v. Bolivarian Republic of Venzuela*, 333 F. Supp. 3d 380, 386 (D. Del. 2018). As in the case of *OI European*, it is simply not credible to

9

assert that a stay of a few months will cause any prejudice to Red Tree in relation to a party that obtained a judgment years earlier.

Indeed, contrary to Red Tree's assertion, Red Tree will not be prejudiced at all because even if the stay is lifted and a judgment against PDVSA is entered in its favor, Red Tree would not be able to enforce that judgment without a special license from OFAC.  Although, as Red Tree argues, Red Tree could apply to the OFAC for a special license to enforce any judgment that it obtains, OFAC's sanctions and licensing requirements further exemplify the speculative nature of Red Tree's alleged prejudice.

Red Tree's claim of prejudice by the Republic's debt restructuring plan similarly lacks merit.  The restructuring plan, which is outlined in the *Guidelines for the Renegotiation of the Chavez/Maduro Era Legacy Public External Debt*, calls for a *voluntary* renegotiation, and will not be implemented until the Maduro's unlawful usurpation of the Venezuelan government has ended and the OFAC sanctions are lifted.  (Dkt. No. 38-1 at pp. 1-2.)

Significantly, Red Tree does not – and cannot – argue that there has been any change in the circumstances that this Court relied on in granting of the stay in the first place – i.e., the Guaidó administration's lack of access to documents and information necessary to defend the case.  (Hernández Decl. ¶¶ 7, 10-11.)  Defendants continue to have a "substantial interest in securing access to relevant facts and personnel," (Dkt. No. 33), which will be compromised if an additional stay is not granted and Defendants are forced to blindly oppose Red Tree's motion for summary judgment.  Red Tree has failed to demonstrate *any* non-speculative prejudice that outweighs Defendants' substantial interests.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should extend the stay for an additional 120 days or, in the alternative, defer consideration of the pending summary judgment motion in order to allow Defendants an opportunity to take discovery of Red Tree and relevant non-party witnesses in order to attempt to obtain information necessary to defend this matter on the merits.

Dated: September 26, 2019

Respectfully submitted,

/s/ Dennis H. Tracey, III
Dennis H. Tracey, III
Robin L. Muir
Hogan Lovells US LLP
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.muir@hoganlovells.com

*Counsel for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A*

11