UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RED TREE INVESTMENTS, LLC,

                            Plaintiff,

                    -against-

PETRÓLEOS DE VENEZUELA, S.A. and
PDVSA PETRÓLEO, S.A.,
                            Defendants.

Docket No. 1:19-cv-02519
(related to 1:19-cv-02523)

## PLAINTIFF RED TREE'S OPPOSITION TO
## DEFENDANTS' MOTION FOR FED. R. CIV. P. 56(d) RELIEF

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Stephen A. Broome        Daniel Salinas-Serrano (*pro hac vice*)
Susheel Kirpalani
Victor Noskov            1300 I Street, N.W.
Anna Deknatel            Suite 900
                         Washington, D.C.
51 Madison Avenue        20005
22nd Floor               (202) 538-8132
New York, New York
10010-1601
(212) 849-7000


*Attorneys for Red Tree Investments, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ....................................................................................................................3

A.     The Note Agreements And The Assignment To Red Tree..................................3

B.     Red Tree's 3213 Action And Removal To This Court........................................5

C.     Defendants Successfully Delay This Action for Nearly A Year .........................6

D.     Defendants Fail To Pursue Available Avenues Of Discovery For Over A Year ...............7

E.     Red Tree's Voluntary Production Renders Defendants' Request For Document Categories 1 and 3 Moot.....................................................................................9

ARGUMENT .......................................................................................................................10

I.     THE HERNÁNDEZ DECLARATION FAILS TO SATISFY RULE 56(d) ...................13

A.     Hernández's Speculation Regarding Hypothetical Defenses Falls Well Short Of Identifying "Facts Essential" To Defendants' Opposition.................................13

B.     The Hernández Declaration Shows That Defendants Failed To Make Reasonable Efforts To Obtain The Requested Discovery....................................................16

C.     The Motion's Additional Speculation Regarding The Parties' Authority To Enter Into The Note Agreements And The Potential Existence Of Fraud Or Misrepresentation Should Be Disregarded ........................................................17

II.    RED TREE'S VOLUNTARY PRODUCTION RENDERS DEFENDANTS' REQUESTS 1 AND 3 MOOT.........................................................................................18

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re Ampal-Am. Israel Corp.*,
  2015 WL 5176395 (Bankr. S.D.N.Y. Sept. 2, 2015) ................................................. 12

*Backman v. Hibernia Holdings, Inc.*,
  1998 WL 427675 (S.D.N.Y. July 28, 1998) ................................................. 12

*Banco Cafetero (Panama) S.A. v. Republic of Peru*,
  1995 WL 494573 (S.D.N.Y. Aug. 18, 1995) ................................................. 11

*Dresser-Rand Co. v. Petróleos*,
  No. 19-CV-02689, Dkt. No. 33 (S.D.N.Y. Aug. 19, 2019) ................................................. 3

*Gindi v. Silvershein*,
  1996 WL 194304 (S.D.N.Y. Apr. 23, 1996) ................................................. 16

*Gurary v. Winehouse*,
  270 F. Supp. 2d 425 (S.D.N.Y. 2003) ................................................. 11

*Halebian v. Berv*,
  869 F. Supp. 2d 420 (S.D.N.Y. 2012) ................................................. 11

*ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*,
  662 F. App'x 19 (2d Cir. 2016) ................................................. 10, 18

*Jin Sheng He v. Sing Huei Chang*,
  83 A.D.3d 788, 921 N.Y.S.2d 128 (2011) ................................................. 16

*Lucas v. United States*,
  775 F.3d 544 (2d Cir. 2015) ................................................. 15

*Lunts v. Rochester City Sch. Dist.*,
  515 F. App'x 11 (2d Cir. 2013) ................................................. 11, 18

*MM Arizona Holdings LLC v. Bonanno*,
  658 F. Supp. 2d 589 (S.D.N.Y. 2009) ................................................. 11

*Money Store of New York, Inc. v. Kuprianchik*,
  240 A.D.2d 398, 658 N.Y.S.2d 1019 (2d Dep't 1997) ................................................. 12

*Paddington Partners v. Bouchard*,
  34 F.3d 1132 (2d Cir. 1994) ................................................. 1, 10, 16

*Tennenbaum Capital Partners LLC v. Kennedy*,
  2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009),
  *aff'd*, 372 F. App'x 180 (2d Cir. 2010)................................................................................. 1, 11

*Torin Assocs., Inc. v. Perez*,
  2016 WL 6662271 (S.D.N.Y. Nov. 10, 2016)........................................................................ 13

## Statutory Authorities

N.Y. Civ. Prac. L. & R. § 3213.............................................................................................. 5, 13

N.Y. Gen. Oblig. § 5–1107 ....................................................................................................... 15

## Rules and Regulations

Fed. R. Civ. P. 56(d) ................................................... 1, 6, 7, 10, 11, 12, 13, 16, 17, 18

Plaintiff Red Tree Investments LLC ("Red Tree") respectfully files this opposition to Petróleos de Venezuela, S.A.'s ("PDVSA") and PDVSA Petróleo, S.A.'s ("Petróleo") (together with PDVSA, "Defendants") Motion for Fed. R. Civ. P. 56(d) Relief (the "Motion"), Dkt. No. 65.

## PRELIMINARY STATEMENT

Defendants' Motion fails to satisfy the strict requirements of Fed. R. Civ. P. 56(d). As an initial and dispositive matter, the Motion—and the accompanying Hernández Declaration—fail to explain how any of the documents Defendants seek would create a genuine issue of material fact sufficient to overcome Red Tree's evidence submitted in support of its Motion for Summary Judgment ("MSJ"), Dkt. No. 24, or are otherwise "essential" to a cognizable defense. Rather, in a classic fishing expedition that Defendants apparently hope will further delay adjudication of this matter, they seek extraordinarily broad categories of documents based on nothing but far-fetched and entirely speculative theories that the documents *may* reveal a potential defense—*e.g.*, that PDVSA was fraudulently induced to sign the Note Agreements; that PDVSA or Petróleo *have* made the payments due under the Note Agreements; or that the original lender's assignment of rights under the Note Agreements to Red Tree was somehow ineffective. Defendants identify no factual basis for believing that any of these hypotheticals is grounded in reality, and the law is clear that Rule 56(d) does not permit such "a fishing expedition based on mere speculation." *See Tennenbaum Capital Partners LLC v. Kennedy*, 2009 WL 2913679, at *5 (S.D.N.Y. Sept. 11, 2009), *aff'd* 372 F. App'x 180 (2d Cir. 2010). The Motion may be denied on this basis alone.

The Motion should also be denied because Defendants have failed to demonstrate that they diligently pursued the requested discovery. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (Rule 56(d) movant must show, *inter alia*, the efforts made to obtain the facts sought and why those efforts were unsuccessful). To the contrary, the record reflects that, during the past year of delay, Defendants failed to perform even the most basic diligence on Red Tree's

1

claims despite the availability of a wealth of relevant documents—including documents in the categories that Defendants now claim are indispensable—in the files of their U.S. counsel, *including their counsel in this case*, Hogan Lovells, LLP ("Hogan").  That Defendants did not lift a finger to pursue the documents that they now claim are essential to their MSJ opposition belies their claims of necessity.

Defendants' failure to search their U.S. counsel's files is inexplicable, given that, as explained further below, (1) Red Tree repeatedly suggested that Defendants search their U.S. counsel's files, and (2) Red Tree's *voluntary* discovery efforts have uncovered hundreds of documents confirming that Hogan led the negotiations over both the Note Agreements and clearly possesses most if not all documents responsive to at least the first category of documents at issue in this Motion.[1]  Indeed, of the documents reviewed by Red Tree, approximately 80% concern the formation of the Note Agreements and the Credit Agreement at issue in the related matter, and were authored by or copied Hogan or Curtis, Mallet Prevost & Mosle, LLP ("Curtis"), who represented Defendants in negotiating the Credit Agreement.  Yet, fully aware that these documents could be found on Hogan's own servers, to date Defendants have not produced a single document from those files, and apparently have not even searched those files, belying their hollow necessity argument.

Defendants also failed to make any effort over the past year to seek documents relevant to the other two categories of documents they now purport to seek,[2] notwithstanding the fact that

---

[1]  *See* Mot. at 7 (describing the first category of documents Defendants seek as "[c]orrespondence and documents exchanged between any initial Noteholder or successor Noteholder and PDVSA or Petróleo concerning the terms and performance of the Note Agreements or Notes, including payment").

[2] *See* Mot. at 7 (describing the second category as "[c]orrespondence and documents exchanged between Red Tree and any initial Noteholder or successor Noteholder concerning the assignment

those documents do not reside exclusively within Defendants' *own* files—to which Defendants claim they lack access—but do reside in files belonging to Red Tree and third-party GE, both of which are located in the United States.  If Defendants genuinely believed that these categories of documents were relevant, they could have asked Red Tree and GE Capital EFS Financing Inc. ("GE Capital EFS") to produce them over a year ago.  But Defendants did not make any effort to obtain these documents either.[3]

Because Defendants' Motion fails to explain (1) how the broad categories of documents they seek would create a material issue of fact with respect to Red Tree's evidence, or otherwise support a cognizable and non-speculative defense, or (2) why Defendants did not seek any of this discovery sooner, their Motion should be denied.

The Motion should also be denied because Defendants' requests for documents in Categories 1 and 3 are moot in light of Red Tree's voluntary production, as explained further below.

## **BACKGROUND**

### A.   **The Note Agreements And The Assignment To Red Tree**

Defendants entered into a Note Agreement dated March 27, 2015 with General Electric Capital Corporation ("GE Capital") as lender, PDVSA as issuer, and Petróleo as guarantor (the

---

or transfer of the Note Agreements or Notes, including payment," and the third category as "[c]orrespondence and documents exchanged between Red Tree and PDVSA or Petróleo concerning the terms and performance of the Note Agreements or Notes, including payment.").

[3]  Defendants' failure to seek party or third party discovery in this case stands in contrast to their conduct in a similar case, where Defendants served discovery requests on the plaintiff *during* the stay.  *See Dresser-Rand Co. v. Petróleos de Venezuela, S.A., et al*, No. 19-CV-02689, Dkt. No. 33 (S.D.N.Y. Aug. 19, 2019) (letter from counsel for plaintiff explaining that, despite the 120 day stay entered on July 3, 2019, Defendants "contend[ed] they are now entitled to full discovery" and that "[d]ocument requests and interrogatories were then served by Defendants on August 13, 2019").

"2015 Note Agreement").[4]  Two notes were issued on March 27, 2015 (the "2015 Notes"), pursuant to the 2015 Note Agreement: one provided that PDVSA agreed to pay GE Capital or its assigns the original principal balance of $131,855,116.31, and the other provided that PDVSA agreed to pay SACE S.p.A., the predecessor to GE Capital EFS under this 2015 Note, or its assigns the original principal balance of $124,700,488.54, with an interest rate of 6.5%, a default interest rate of 8.5%.[5]

PDVSA failed to make the required payments on the maturity date of the 2015 Notes, March 27, 2018.[6]  Despite Petróleo's obligation as guarantor to immediately pay all outstanding amounts due on the 2015 Notes, it failed to make any payments.[7]  On July 26, 2018, GE Capital EFS sent notice of missed payment to PDVSA and Petróleo.  Neither PDVSA nor Petróleo has tendered any payments to GE Capital, GE Capital EFS, or Red Tree for the amounts outstanding under the 2015 Notes.[8]  On January 25, 2019, GE Capital EFS assigned the 2015 Notes to Red Tree.[9]  As of the date of assignment, the outstanding principal amount due and owing on the 2015 Notes was $21,379,633.74.[10]

Defendants entered into a second Note Agreement dated May 13, 2016, with GE Capital EFS as lender, PDVSA as issuer, and Petróleo as guarantor (the "2016 Note Agreement" and

---

[4] Declaration of Stephen A. Broome in Support of Red Tree's Motion for Summary Judgment ("Broome Declaration"), Dkt. No. 25, Ex. 4 (2015 Note Agreement).

[5] *Id.*, Exs. 5 and 6 (2015 Notes).

[6] *Id.*, Ex. 9 (Affidavit of Daniel Wallitt describing the 2015 Notes (the "2015 Wallitt Affidavit")), ¶ 8.

[7] *See* 2015 Wallitt Affidavit, ¶ 9.

[8] *Id.*, Ex. A (Notice of Non Payment).

[9] *See id.*, Ex. E (2015 Notes Assignment Agreement).

[10] *See id.*, ¶ 14.

together with the 2015 Note Agreement, the "Note Agreements").[11]  A note was issued on May 13, 2016 (the "2016 Note"), pursuant to a the 2016 Note Agreement, in the principal amount of $193,959,763.03, with an annual interest rate of 6.5%, a default interest of 8.5%.[12]

PDVSA failed to make the required payment on the 2016 Note on December 27, 2017.[13] Despite Petróleo's obligation as guarantor to immediately make all outstanding payments on the 2016 Note as they came due, Petróleo failed to make any payments.[14]  On January 5, 2018, GE Capital EFS sent notice of non-payment to PDVSA and Petróleo.[15]  On March 19, 2018, GE Capital EFS sent a notice of acceleration to PDVSA and Petróleo.[16]  Neither PDVSA nor Petróleo has tendered any payments to GE Capital or Red Tree for the amounts outstanding under the 2016 Note.[17]  On January 25, 2019, GE Capital EFS assigned the 2016 Note to Red Tree.[18]  As of the date of assignment, the outstanding principal amount due and owing on the 2016 Note was $96,979,881.49.[19]

### B.   Red Tree's 3213 Action And Removal To This Court

On February 15, 2019, approximately three weeks after the assignment, Red Tree commenced this proceeding against Defendants by filing, in New York State court, a motion for summary judgment in lieu of complaint under CPLR 3213 (the "3213 Motion") for breach of

---

[11] Broome Decl., Ex. 7 (2016 Note Agreement).

[12] *Id.*, Ex. 8 (2016 Note).

[13] *Id.*, Ex. 10 (Affidavit of Daniel Wallitt describing the 2016 Note (the "2016 Wallitt Affidavit")), ¶ 6.

[14] *See* 2016 Wallitt Affidavit, ¶ 7.

[15] *See id.*, Ex. A (Notice of Non Payment).

[16] *See id.*, Ex. B (Acceleration Letter).

[17] *See id.*, ¶¶ 6-7.

[18] *See id.*, Ex. C (2016 Note Assignment Agreement).

[19] *See id.*, ¶ 10.

Defendants' obligation to make payments due under the Note Agreements.  *See* Broome Decl. Dkt. No. 25, Exs. 1-11.  On March 21, 2019, Defendants removed the action to this Court.  *See* Dkt. No. 1.

### C.     Defendants Successfully Delay This Action for Nearly A Year

Within a week of removal, Defendants filed a motion to stay the proceedings.  Dkt. No. 9 (the "Stay Motion").  In support of the Stay Motion, Defendants argued that the extraordinary political conditions in Venezuela and their purported inability to access relevant documents warranted a "limited stay."  Dkt. No. 10, at 1.  On May 3, 2019, this Court entered an Order granting a 120-day stay in light of the "current political environment in Venezuela" and Defendants' apparent inability to access relevant documents, which the Court explained "outweigh[ed] [Red Tree]'s interest in avoiding delay, at least with respect to the limited [120-day] period at issue in [that] motion."  Dkt. No. 33 ("May Stay Order"), at 1-2.

When the stay expired on September 26, 2019, Defendants sought an additional stay, in light of their continued lack of "full access to the personnel and documents of the Venezuelan government and its instrumentalities."  Dkt. No. 50 (the "Additional Stay Motion").  In the alternative, Defendants asked the Court to allow them to pursue additional discovery.  *Id.* at 1.

On January 14, 2020, after an additional almost four months during which the stay effectively remained in place, the Court rejected Defendants' request to continue the stay.  Dkt. No. 57 (the "January 2020 Order").  In the January 2020 Order, the Court explained that the "weights of the[] interests have shifted since" the prior stay because "Plaintiff's interest in proceeding expeditiously with this litigation and the prejudice to Plaintiff have grown as the litigation is further delayed."  *Id*. at 5.  The Court also reserved judgment on Defendants' alternative discovery request and allowed the Defendants to consider whether "to *more fully* brief their Rule 56(d) request—and support it with a *sufficient* Rule 56(d) affidavit or declaration."  *Id*. at 6 (emphasis added).

To avoid additional delay and costs associated with Rule 56(d) briefing, and to facilitate the expeditious adjudication of this matter—and notwithstanding Red Tree's belief that *no* additional discovery is necessary to resolve this straight-forward action—Red Tree immediately engaged Defendants to discuss their purported need for documents and to determine whether Red Tree could resolve the dispute (or at least reduce its scope) by making a voluntary production. Red Tree offered to collect and produce all documents and communications with the Defendants related to the negotiation of and performance under the Note Agreements, including correspondence and documents exchanged between GE Capital EFS or Red Tree and the Defendants concerning the terms and performance under the Note Agreements, including payment.[20] As noted further below, that collection and production process is now complete and Red Tree produced the documents to Defendants earlier today.

### D.      Defendants Fail To Pursue Available Avenues Of Discovery For Over A Year

During the more than a year that this case has been pending, it appears that the *only* thing Defendants have done to pursue potentially relevant documents is to send a single letter to the newly appointed Ad Hoc Board of PDVSA requesting documents related to this litigation. *See* Declaration of Jose Ignacio Hernández González in Support of Motion ("Hernández Decl."), Dkt. No. 66, ¶ 12. According to Defendants' declarant, Special Attorney General of the Republic of Venezuela, José Ignacio Hernández González ("Hernández"), on August 29, 2019, he received a response letter from Luis Pacheco, the Chairman of the Ad Hoc Board of Directors of PDVSA, which "confirmed" that the Ad Hoc Board did not have access to the requested documents. *Id.*; *see also* Declaration of Jose Ignacio Hernández González in Support of Additional Stay Motion, Dkt. No. 51. The Hernández Declaration, however, does not suggest that, in the five and a half

---

[20] *See* Joint Letter, Dkt. No. 60 (Jan. 24, 2020) (discussing negotiations between the parties).

months since receiving Pacheco's letter, Defendants have made any further attempts to follow up with the Ad Hoc Board about the request.  *See* Hernández Decl.  Nor does the Hernández Declaration suggest that Defendants took any other steps to diligence Red Tree's claims—notwithstanding the fact that other avenues of discovery clearly were available.

As Red Tree has noted in the past and has now confirmed through its voluntary discovery efforts, Defendants were represented by Hogan—Defendants' counsel *in this very case*—in connection with the negotiation of both Note Agreements.  Red Tree previously suggested that Defendants search the files of their U.S. counsel.  *See* Red Tree's Memorandum in Opposition to Motion to Stay, Dkt. No 52, at 4-5 (Oct. 10, 2019); Red Tree's Letter Motion for Status Conference, Dkt. No. 54 (Oct. 18, 2019).  Indeed, as recently as January 17, 2020, during a phone call between the parties' respective counsel in this case, Red Tree again suggested that Defendants search their U.S. counsel's files.  *See* Declaration of Daniel Salinas ("Salinas Decl."), filed concurrently herewith, at ¶ 6.  Defendants apparently have ignored Red Tree's suggestions.

Following the filing of Defendants' Additional Stay Motion, Red Tree voluntarily undertook to collect documents, which Defendants could have sought to do themselves months ago had they genuinely believed such documents were relevant, and produced those documents to Defendants.  The production includes hundreds of documents responsive to Defendants' Category 1, related to PDVSA's negotiation of and performance under the Credit Agreement, involving or authored by PDVSA's counsel, Hogan, which demonstrate that the agreement was the product of a heavily negotiated process among sophisticated parties represented by capable U.S. counsel.  *See, e.g.*, Salinas Decl. Exs. B and C (emails appending legal opinions by Hogan regarding validity of both Note Agreements).

Moreover, Hogan not only served as PDVSA's lead counsel in negotiating the Note Agreements with GE Capital and GE Capital EFS, Hogan also provided a legal opinions that—contrary Defendants' present speculation that the Note Agreements were induced by fraud or are otherwise void—each "[t]he Note Agreement constitutes a valid and binding obligation of [PDVSA], enforceable against [PDVSA] in accordance with its terms." *See* Salinas Decl., Ex. B at RT_00000229 and Ex. C at RT_00003138.

It appears, therefore, that during the past year, while Defendants have successfully delayed this action on the pretense that they lack access to critical documents, they did not bother to seek those documents from the law firms that represented them in the transactions at issue, including the law firm that represents them *in these proceedings and through which they pursued the stay*.

Beyond that egregious failure, Defendants also failed to take numerous other steps that would have been reasonable under the circumstances. For example, although Defendants now speculate that the assignment of claims to Red Tree might not be effective, Defendants never bothered to raise this concern previously, nor did they seek documents from Red Tree or GE Capital EFS concerning the assignment (beyond the documents that Red Tree already filed in this action) until *after* the entry of this Court's January 2020 Order lifting the stay. Moreover, when Defendants finally did request documents related to the assignment from Red Tree, they refused to identify any factual basis for believing that the assignment might be ineffective, or to limit their request to anything less than "all" documents concerning the assignment.

### E.   Red Tree's Voluntary Production Renders Defendants' Request For Document Categories 1 and 3 Moot

As described in the Declaration of Mark Oakes, filed contemporaneously herewith (the "Oakes Declaration"), over the past several months, Red Tree, together with GE Capital EFS's outside counsel, Norton Rose Fulbright, LLP ("Norton"), identified the custodians at GE Capital

EFS that were involved in its dealings with the Defendants in connection with the Note Agreements (and in connection with the Credit Agreement, which are the subject of a related proceeding in this Court). GE Capital EFS's counsel searched all of these custodians' emails and documents for the terms "pdvsa" or "petróleo." After reviewing for relevance and privilege, GE Capital EFS produced responsive documents to Red Tree, and following its own review, Red Tree produced 1,546 documents (13,639 pages) to Defendants earlier today. The production contains numerous documents responsive to Category 1 in Defendants' Motion.

Red Tree has also confirmed that there are no documents responsive to Category 3 because Red Tree has not communicated with Defendants concerning the terms and performance of the Note Agreements and Notes other than in connection with this lawsuit. *See* Salinas Decl., Ex. A at 1 (Voluntary Production Letter).

## ARGUMENT

Pursuant to Rule 56(d), "if a non-movant shows *by affidavit or declaration* that, for specified reasons, it cannot present *facts essential* to its opposition" to summary judgment, a court may defer considering a summary judgment motion, deny the motion, allow the non-movant more time to obtain affidavits or take discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d) (emphasis added). The Second Circuit has explained that a Rule 56(d) declaration must set forth: (1) the nature of the uncompleted discovery; (2) how the facts sought are reasonably expected to create a genuine issue of material fact; (3) the efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful. *See Paddington Partners*, 34 F.3d at 1138 (affirming district court's denial of request for discovery in response to summary judgment motion under predecessor to Rule 56(d)).

The standard is strict. For example, it requires far more than a mere demand for more discovery: the movant must "show how discovery would lead to facts that might justify its

opposition." *ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, 662 F. App'x 19, 22 (2d Cir. 2016). The declarant must also explain how the requested discovery would create a genuine issue of material fact that could defeat summary judgment. *See Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 14 (2d Cir. 2013) (affirming denial of Rule 56(d) motion where the request was supported only by "conclusory allegations of incomplete discovery" and did "not identif[y] any potentially discoverable evidence that would have raised a genuine issue of material fact"); *Banco Cafetero (Panama) S.A. v. Republic of Peru*, 1995 WL 494573, at *6 (S.D.N.Y. Aug. 18, 1995) (denying discovery request, under the predecessor rule, seeking to "locate, identify, and depose their own former employees" because request failed to identify "particular witnesses or anticipated factual findings" and the information sought would not defeat summary judgment).

Speculation about a potential claim or defense that *might* be revealed by additional discovery is not sufficient under Rule 56(d). *See Tennenbaum Capital Partners*, 2009 WL 2913679, at *5, *aff'd* 372 F. App'x 180 (2d Cir. 2010) (holding that, because the Rule 56(d) movant "proffers no good faith basis for [his] belief that discovery would produce any information contrary to Plaintiff's declarations," "the Court will not permit . . . a fishing expedition based on mere speculation"); *Halebian v. Berv*, 869 F. Supp. 2d 420, 440 (S.D.N.Y. 2012) (stating that a Rule 56(d) motion that failed to "identify the facts [sought] with any particularity" was "a de facto application for a fishing expedition"); *MM Arizona Holdings LLC v. Bonanno*, 658 F. Supp. 2d 589, 596 (S.D.N.Y. 2009) ("A conclusory accusation accompanied by a generalized request for additional discovery is the type of fishing expedition" under the predecessor rule to 56(d) that is "disfavored by the courts."); *Gurary v. Winehouse*, 270 F. Supp. 2d 425, 430 (S.D.N.Y. 2003) (denying discovery request under predecessor rule that failed to "point to any reason to believe it

11

would yield useful factual material" because "[a] mere desire to investigate, or to conduct an audit, is not enough").

Indeed, courts have specifically denied Rule 56(d) motions in the context of an action to recover under a note and guarantee where the proposed discovery "would not elicit any evidence material to the dispute and would serve no purpose other than to delay resolution," because the proposed discovery did not "excuse" performance under the note and guaranty and "extrinsic evidence" was inadmissible because the documents were "unambiguous." *See In re Ampal-Am. Israel Corp.*, 2015 WL 5176395, at *14 (Bankr. S.D.N.Y. Sept. 2, 2015), *aff'd*, 677 F. App'x 5 (2d Cir. 2017); *see also Backman v. Hibernia Holdings, Inc.*, 1998 WL 427675, at *4 (S.D.N.Y. July 28, 1998) (granting motion for summary judgment to collect on a demand note and denying defendant's motion under predecessor to Rule 56(d)) (citing *Money Store of New York, Inc. v. Kuprianchik*, 240 A.D.2d 398, 398, 658 N.Y.S.2d 1019, 1020 (2d Dep't 1997) (holding that conclusory or speculative assertions that the underlying loan had been discharged or modified were insufficient to raise triable issue of fact and defeat motion for summary judgment in lieu of complaint)).

The Motion here flouts these basic tenets of Rule 56(d).  First, the Hernández Declaration offers nothing but rank speculation about defenses that hypothetically could be revealed by the requested discovery.  The law makes clear that is not enough.  Second, the Hernández Declaration tacitly concedes that Defendants' efforts to obtain relevant documents have been virtually non-existent: Defendants simply ignored documents in the possession of their own counsel and took no steps at all to seek documents from either Red Tree or GE until shortly before filing this Motion.

Moreover, the *additional* speculation by Defendants' counsel in the Motion itself—which goes beyond Hernández's speculation—is (i) irrelevant because it is not contained in an "affidavit

or declaration" as expressly required by Rule 56(d), and (ii) similarly unfounded and insufficient to demonstrate the existence of a genuine issue of material fact.  Finally, there can be no genuine dispute that Red Tree's voluntary production of documents renders moot requests 1 and 3.

## I.    THE HERNÁNDEZ DECLARATION FAILS TO SATISFY RULE 56(d)

### A.    Hernández's Speculation Regarding Hypothetical Defenses Falls Well Short Of Identifying "Facts Essential" To Defendants' Opposition

Rule 56(d) specifically requires the submission of an "affidavit or declaration" that explains, *inter alia*, why the requested discovery is necessary to identify "facts essential to justify [the] opposition."  Consistent with this explicit requirement and cognizant of the strict standard under Rule 56(d), this Court's January 2020 Order denying the Stay Motion required the Defendants, in connection with any additional request for Rule 56(d) discovery, to "*more fully brief their Rule 56(d) request—and support it with a *sufficient* Rule 56(d) affidavit or declaration.*" January 2020 Order at 6 (emphasis added).

The majority of the Hernández Declaration is devoted to rehashing Defendants' argument that they cannot access their *own* files in light of the ongoing political crisis in Venezuela.  *See* Hernández Decl. ¶¶ 10-12.  Although Hernández states that Defendants "seek discovery of *all documents and information* relevant to a claim or defense in this action, including" three broad categories of "[c]orrespondence and documents,"[21] he fails to explain how these categories are "essential" to justify Defendants' opposition.  *See id*. ¶ 14 (emphasis added); *see also* Rule 56(d).

---

[21] It is axiomatic that discovery (and especially discovery in cases such as this one brought pursuant to CPLR § 3213) cannot seek any and all conceivable documents and document categories under any unsubstantiated theory.  *See, e.g.*, *Torin Assocs., Inc. v. Perez*, 2016 WL 6662271, at *3 (S.D.N.Y. Nov. 10, 2016) (in the context of CPLR 3213, noting that "the party asserting that a fact is genuinely disputed must support their assertion by citing to particular parts of materials in the record or showing that the materials cited do not establish the absence . . . of a genuine dispute [and] [t]he nonmoving party may not rely on conclusory allegations or unsubstantiated speculation").

He fails, for example, to specifically identify a single defense that Defendants have reason to believe will be supported by these documents. To the contrary, Hernández acknowledges that, *at most*, these categories of documents would allow Defendants "to *evaluate* whether such a defense *may* be available." *Id.* ¶ 11 (emphasis added).

*First*, the Hernández Declaration requests "[c]orrespondence and documents exchanged between any initial Noteholder or successor Noteholder and PDVSA or Petróleo concerning the terms and performance of the Note Agreements or Notes, including payment." *Id.* ¶ 14. Hernández contends that Defendants "cannot . . . confirm or refute Red Tree's allegation that payment has not been made on the Note Agreements, or whether the Note Agreements have been amended, modified, or satisfied." *Id.* ¶ 11. But Red Tree has already filed evidence that payment has *not* been made, *see* 2015 Wallitt Aff. ¶¶ 8-9; 2016 Wallitt Aff. ¶¶ 6-7, and Hernández offers no factual basis for believing that this evidence is false and/or that payment *has* been made, or that the Note Agreements were "amended, modified, or satisfied" in some material respect. He simply speculates that, in theory, these things could have happened, notwithstanding Red Tree's evidence to the contrary.[22]

*Second*, the Hernández Declaration requests "[c]orrespondence and documents exchanged between Red Tree and any initial Noteholder or successor Noteholder concerning the assignment

---

[22] The Court has before it all potentially relevant documents related to the "terms and performance of the Note Agreements, including payment." Specifically, Red Tree has filed: (i) both Note Agreements themselves and the Notes issued thereunder, Dkt. No. 25, Exs. 4-8; (ii) the Affidavits of Daniel Wallitt, a representative of the former lender under the Note Agreements, GE Capital EFS Financing, Inc., Dkt. No. 25, Exs. 9 and 10; (iii) notices of missed payments and notices of acceleration sent to Defendants, 2005 Wallitt Aff., Ex. A and 2006 Wallitt Aff., Exs. A and B; (iv) the agreements providing for the assignments of the Note Agreements from GE to Red Tree, 2005 Wallitt Aff., Ex. E and 2006 Wallitt Aff., Ex. C; and (v) the notices of assignment sent by GE to the Defendants, 2005 Wallitt Aff., Ex. F and 2006 Wallitt Aff., Ex. D. This unrebutted evidence establishes Defendants' obligations to pay and their failure to do so in breach of the Note Agreements.

or transfer of the Note Agreements or Notes, including payment." Hernández Decl. ¶ 14. Although Hernández does not suggest that Defendants have reason to believe that the assignments were invalid, he states in an earlier paragraph, that "Defendants do not have access to any documents or information concerning the assignments and their validity, other than the documents filed by Red Tree in connection with this litigation, and those documents are insufficient *to allow Defendants to determine the efficacy of the assignments to Red Tree*." *Id*. ¶ 13 (emphasis added). Red Tree, however, has already filed: (1) the sworn Affidavits of GE Managing Director, Daniel Wallitt, attesting to the validity of the assignments of the Note Agreements to Red Tree, Dkt. No. 25, Exs. 9 and 10; (2) the executed Assignment Agreements, 2005 Wallitt Aff., Ex. E and 2006 Wallitt Aff., Ex. C; and (3) Notices of Assignment sent by GE to PDVSA, 2005 Wallitt Aff., Ex. F and 2006 Wallitt Aff., Ex. D. Hernández offers no basis to believe that this evidence is fraudulent or otherwise invalid. Nor does he offer any basis for believing that some broader set of documents "concerning the assignments" might demonstrate that the assignments were invalid. Moreover, New York law is clear that an assignment is valid where, as here, it is "made in writing and signed." *See Lucas v. United States*, 775 F.3d 544, 548 (2d Cir. 2015) (citing N.Y. Gen. Oblig. § 5–1107). The written and fully executed assignment agreements are therefore all that is necessary to demonstrate the assignments' validity.

*Third*, the Hernández Declaration requests "[c]orrespondence and documents exchanged between Red Tree and PDVSA or Petróleo concerning the terms and performance of the Note Agreements or Notes, including payment." Hernández Decl. ¶ 14. As an initial matter, Red Tree has confirmed that, other than the documents filed or exchanged between the parties in connection with this lawsuit, Red Tree has not exchanged *any* "correspondence or documents . . . concerning the terms and performance of the Note Agreements or Notes, including payment," with either

Defendant.  Therefore, there are no documents responsive to this category.  In any event, Hernández's request for this category appears to relate to his speculation that PDVSA might already have paid its debts under the Note Agreements.  But, as with the first category, the Hernández Declaration is devoid of any factual basis for believing that this happened.  And Red Tree's evidence in support of its MSJ confirms that it did not.

In sum, with respect to each category of documents requested, Hernández offers nothing but speculation about documents that *might* exist and which, *if* they exist, *might* give rise to a defense.  That is not the kind of discovery that Rule 56(d) contemplates.  *See, e.g.*, *Paddington Partners*, 34 F.3d at 1138 (noting that a party's attempt to use the predecessor to Rule 56(d) "to find out if it has a claim, rather than that it has a claim for which it needs additional discovery" is a "divagation [that] is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure"); *Gindi v. Silvershein*, 1996 WL 194304, at *7 (S.D.N.Y. Apr. 23, 1996) (denying request for additional discovery to oppose summary judgment where the information sought is unspecified and the result of the proposed discovery is "wholly speculative") (citation omitted); *see also Jin Sheng He v. Sing Huei Chang*, 83 A.D.3d 788, 789, 921 N.Y.S.2d 128, 130 (2011) ("defendant's unsupported, conclusory allegations with respect to the defenses of fraud and lack of consideration were insufficient to defeat the plaintiff's entitlement to summary judgment").

> **B.** **The Hernández Declaration Shows That Defendants Failed To Make Reasonable Efforts To Obtain The Requested Discovery**

Although Hernández spills considerable ink explaining why Defendants have not been able to access documents in their *own* files, he fails to explain why defendants have not pursued even the most basic avenues to obtain the requested discovery from other sources.

Hernández does not explain, for example, why, during the more than twelve months that this litigation has been pending, Defendants have not made *any effort whatsoever* to obtain the

documents requested in their first category from their own U.S. counsel in those transactions. This lack of diligence is particularly concerning given that Hogan—the same firm that offered a legal opinion that the Note Agreements were valid and enforceable and thus knew full well that the documents would not support Defendants' speculative allegations about potential fraud in the inducement—represents the Defendants in this case. The Hernández Declaration, presumably, now sits on the same server of the same law firm that also houses diligence materials the Defendants, through that same law firm, claim they cannot access.

Moreover, Defendants' purported inability to access their *own* files does not explain why, during the more than twelve months since Red Tree filed this action, Defendants failed to take any steps whatsoever to seek documents "concerning the assignment" from Red Tree or GE. Those documents are in Red Tree's and GE's files, not Defendants' files, and therefore Defendants' purported inability to access their own files fails to justify the exceedingly belated nature of this request. Indeed, Defendants never questioned the validity of the assignment, or requested documents "concerning the assignment," until the Eleventh Hour, when they realized that they were going to have to brief this Motion. In any case, all of the documents necessary to determine the validity of the assignment are attached to Red Tree's MSJ.

### C. The Motion's Additional Speculation Regarding The Parties' Authority To Enter Into The Note Agreements And The Potential Existence Of Fraud Or Misrepresentation Should Be Disregarded

Having offered the Court an insufficient Declaration, Defendants' Motion attempts to supplement Hernández's speculation about unspecified defenses with additional speculation by Defendants' counsel, blatantly ignoring Rule 56(d)'s express requirement that the "facts essential" to the movant's opposition be stated in "affidavit or declaration."

For example, the Motion suggests that the requested discovery is "necessary to determine whether the Note Agreements and Notes were entered into with proper authority, whether there

was fraud or misrepresentation in connection the execution of the Note Agreements and Notes, and whether the Note Agreements have been amended, revised, or discharged." Mot. at 7. This goes beyond even the speculation in the Hernández Declaration, and certainly is not supported by any factual basis stated in the Hernández Declaration (or in the Motion). *See* Hernández Decl. ¶ 11. Accordingly, this unsupported theorizing should be disregarded, and the Court should assess the request for discovery based exclusively on whether the Hernández declaration satisfies Rule 56(d) (which, as demonstrated above, it does not). *See, e.g.*, *ICBC (London) PLC*, 662 F. App'x at 22 (noting that "[t]he failure to file such an affidavit is fatal to a [Rule 56(d) motion] [confirm] . . . even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law") (citation omitted); *Lunts*, 515 F. App'x at 14 (the "sworn affidavit in opposition to summary judgment did not meet the requirements of Rule 56(d) because it contained only conclusory allegations of incomplete discovery").

## II.   RED TREE'S VOLUNTARY PRODUCTION RENDERS DEFENDANTS' REQUESTS 1 AND 3 MOOT

Red Tree's voluntary production of the documents related to the negotiation of and performance under the Note Agreements moots Defendants' request for the documents in Category 1. Red Tree also has confirmed that there are no documents responsive to Category 3, which moots Defendants' request for that Category as well. *See* Salinas Decl., Ex. A at 1. Thus Category 2— *i.e.*, documents concerning GE's assignment of the Note Agreements to Red Tree—appear to be the only category of documents genuinely in dispute. Defendants request for those documents should be rejected for the reasons explained in Sections I.A and B, *supra*.

* * * * *

Defendants' strategy throughout this case has been single-minded: delay. But enough is enough. Having denied Defendants' request for an additional stay of the case, the Court should

not allow them to use broad and unsubstantiated discovery requests under Rule 56(d) to revive their delay strategy and further prejudice Red Tree.  Denying Defendants' motion is especially appropriate here, as Defendants chose to sit on their hands for over a year and hide behind claims that they could not access documents, most of which sat in the files of the same lawyers that represent them in this case.

## **CONCLUSION**

WHEREFORE, Red Tree respectfully requests that the Court deny Defendants' Motion and set an expedited schedule for full briefing of the Summary Judgment Motion, awarding such other relief as the Court considers appropriate.

Respectfully submitted,

DATED:  New York, New York
       February 18, 2020

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By: */s/ Stephen A. Broome*   */s/ Daniel Salinas-Serrano*

Stephen A. Broome     Daniel Salinas-Serrano
Susheel Kirpalani      (*pro hac vice*)
Victor Noskov         1300 I Street, N.W.
Anna Deknatel         Suite 900
51 Madison Avenue,    Washington, D.C. 20005
22nd Floor           Tel: 202-538-8132
New York, New York
10010-1601
(212) 849-7000

*Attorneys for Red Tree Investments, LLC*