UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RED TREE INVESTMENTS, LLC,

                Plaintiff,

    -against-

PETRÓLEOS DE VENEZUELA, S.A. and
PDVSA PETRÓLEO, S.A.,

                Defendants.

Docket Nos.:
1:19-cv-02519;
1:19-cv-02523

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT

HOGAN LOVELLS US LLP
Dennis H. Tracey, III
Matthew A. Ducharme
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
matthew.ducharme@hoganlovells.com

Richard C. Lorenzo (pro hac vice)
600 Brickell Avenue
Suite 2700
Miami, Florida 33131
Tel: 305-459-6500
Fax: 305-459-6550
richard.lorenzo@hoganlovells.com

*Counsel for Defendants Petróleos de
Venezuela, S.A. and PDVSA Petróleo,
S.A.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

  I.   THE UNDERLYING DEBT ............................................................................ 2

  II.  PROCEDURAL HISTORY............................................................................. 4

  III.  DEFENDANTS LACK ACCESS TO ALL RELEVANT DOCUMENTS.................... 6

ARGUMENT .......................................................................................................... 8

  I.   RELEVANT LEGAL STANDARDS ................................................................. 8

  II.  TRIABLE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO
DEFENDANTS' IMPOSSIBILITY DEFENSE........................................................ 9

    A.  The United States Issued Sanctions Against Defendants That Prevented Defendants
from Engaging in Certain Financial Transactions with a United States Nexus. ................... 10

    B.  Defendants' Performance of Its Payment Obligations Was Rendered Impossible
Because Banks Were Unwilling to Process Payments From PDVSA Due to Risks Arising
From U.S. Sanctions............................................................................................ 12

CONCLUSION....................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................8

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
   769 F.2d 919 (2d Cir. 1985)...................................................................................7

*Cai Rail, Inc. v. Badger Mining Corp.*,
   No. 20 CIV. 4644 (JPC), 2021 WL 705880 (S.D.N.Y. Feb. 22, 2021)....................9

*Camofi Master LDC v. Coll. P'ship, Inc.*,
   452 F. Supp. 2d 462 (S.D.N.Y. 2006)..................................................................8, 9

*Cronin v. Aetna Life Ins. Co.*,
   46 F.3d 196 (2d Cir. 1995).....................................................................................8

*Kel Kim Corp. v. Cent. Mkts., Inc.*,
   519 N.E.2d 295 (N.Y. 1987)............................................................................14, 15

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)...................................................................................8

*Transfield ER Cape Ltd. v. STX Pan Ocean Co.*,
   No. 09 CIV. 1250 (JGK), 2009 WL 691273 (S.D.N.Y. Mar. 17, 2009) .................14

*United States v. Gen. Douglas MacArthur Senior Vill., Inc.*,
   508 F.2d 377 (2d Cir. 1974)...................................................................................9

*Valley Nat'l Bank v. Oxygen Unlimited, LLC*,
   No. 10 Civ. 5815 (GBD), 2010 WL 5422508 (S.D.N.Y. Dec. 23, 2010)................8

**Other Authorities**

31 C.F.R. § 591.406 ....................................................................................................10

Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 25, 2017) ............................. *passim*

Exec. Order No. 13850, 83 Fed. Reg. 55243 (Nov. 1, 2018) ................................11, 12

Fed. R. Civ. P. 56(a) ....................................................................................................8

Fed. R. Civ. P. 56(d) ...............................................................................................5, 6

General License 9. *Authorizing Transactions Related to Certain Dealings in Debt*, Department of the Treasury (Jan. 28, 2019), available at https://home.treasury.gov/system/files/126/venezuela_gl9.pdf (last visited August 16, 2021)..................................................................................................................12

OFAC Frequently Asked Question 401, U.S. Department of the Treasury, available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs (last visited Aug. 16, 2021)....................................................................................................11

OFAC Frequently Asked Question 514, U.S. Department of the Treasury, available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs (last visited Aug. 16, 2021)....................................................................................................12

Defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo") (together, "Defendants") respectfully submit this memorandum in opposition to the motion for summary judgment in lieu of complaint of plaintiff Red Tree Investments, LLC ("Red Tree").

## PRELIMINARY STATEMENT

Plaintiff Red Tree commenced the instant actions (No. 1:19-cv-02519, hereinafter referred to as "*Red Tree 1*," and No. 1:19-cv-02523, hereinafter referred to as "*Red Tree 2*") by motion for summary judgment in lieu of complaint, seeking money judgments for amounts allegedly owed under two note agreements and a credit agreement executed by PDVSA and guaranteed by Petróleo. According to Red Tree, Defendants defaulted, and remain in default, on (1) two notes issued under a note agreement dated March 27, 2015 (the "2015 Note Agreement"); (2) one note issued under a note agreement dated May 13, 2016 (the "2016 Note Agreement"); and (3) a credit agreement dated December 27, 2016 (the "Credit Agreement"). Red Tree alleges that each of the instruments was assigned to Red Tree in January 2019 by GE EFS Capital Financing Inc. ("GE EFS"). Red Tree now claims that it is entitled to judgments for the entire outstanding principal on each instrument, plus interest, and purports to have established its claims as a matter of law, warranting summary judgment in its favor.

Red Tree's motion should be denied because triable issues of fact exist with respect to whether circumstances outside of Defendants' control made it impracticable, or impossible, for Defendants to perform their payment obligations under the notes; note agreements; and credit agreement (collectively, the "Agreements"). Specifically, due to the imposition of United States sanctions on Venezuelan government entities, including Defendants, it became difficult—and eventually impossible—for Defendants to make payments under the Agreements because banking institutions refused to process these high-risk transactions.

1

There is no question that PDVSA had every intention of repaying the full amount of each instrument. But the imposition of U.S. sanctions made it impossible to do so. It is undisputed that PDVSA made *every single principal and interest payment on each instrument* prior to the imposition of sanctions. It was only when sanctions were imposed that banks refused to process payment transactions and made repayment impossible. For example, PDVSA paid every principal and interest payment on the 2015 Notes until sanctions hit shortly before the final payment was due. Even though PDVSA had made payments of nearly $260 million on the 2015 Notes, it was not able to make the final $22 million payment, and a default was declared.

On at least three separate occasions, banks rejected attempted payments from PDVSA—one rejection coming from Defendants' bank, Zuma Bank Corporation ("Zuma Bank"), and two other rejections from GE EFS's bank, Deutsche Bank. The sanctions prompted banks to reject Defendants' payment attempts in order to minimize risk of sanctions noncompliance. This initially made it difficult, and ultimately impossible, for Defendants to make any payments under the Agreements. Under New York law, this excused any delay in payment and precludes summary judgment in favor of Red Tree.

For these reasons and those that follow, Defendants respectfully request that the Court deny Red Tree's motion for summary judgment in its entirety.

## BACKGROUND

### I.    THE UNDERLYING DEBT

At issue in the above-captioned matters are three debt instruments and a credit agreement. In *Red Tree 1*, Red Tree alleges PDVSA entered into the 2015 Note Agreement with General Electric Capital Corporation ("GE Capital") on March 27, 2015. Pursuant to this agreement, PDVSA issued two corresponding notes: (1) a note in the original principal amount of $131,855,116.31 to GE Capital (the "R-2 Note"); and (2) a note in the original principal

amount of $124,700,488.54 to SACE S.p.A. ("SACE") (the "R-3 Note" and together with the R-2 Note, the "2015 Notes"). *Red Tree 1* Dkt. Nos. 25-6, 25-7. Red Tree also alleges that Defendants entered into the 2016 Note Agreement with GE EFS on May 13, 2016, and that PDVSA issued a corresponding note to GE EFS (the "2016 Note"). *Red Tree 1* Dkt. No. 25-8, 25-12 ¶ 3.

Red Tree alleges that GE EFS inherited the 2015 Note Agreement and the R-2 Note when it became the successor to GE Capital on November 4, 2015, and that SACE assigned the R-3 Note to GE EFS on August 10, 2018. *Red Tree 1* Dkt. No. 25-11 ¶¶ 3, 6. Red Tree further alleges that GE EFS assigned both 2015 Notes, the 2016 Note, and both the 2015 and 2016 Note Agreements to Red Tree on January 25, 2019 via assignment and acceptance agreements. *Red Tree 1* Dkt. No. 25-11 ¶ 13; Dkt. No. 25-12 ¶ 9. Although Defendants previously made regular payments on each instrument, Red Tree alleges that Defendants defaulted on the 2016 Note on December 27, 2017 and defaulted on the 2015 Notes on March 27, 2018. *Red Tree 1* Dkt. No. 25-11 ¶¶ 8-9; Dkt. No. 25-12 ¶¶ 6-7.

In *Red Tree 2*, Red Tree alleges Defendants entered into a credit agreement on December 27, 2016 with GE EFS as administrative agent and lender, PDVSA as borrower, and Petróleo as guarantor, pursuant to which GE EFS agreed to extend credit in the form of loans. *Red Tree 2* Dkt. No. 26-6 ¶¶ 3-5. Under the agreement, quarterly payments were due by Defendants on four different disbursements. According to Red Tree, GE EFS assigned the Credit Agreement to Red Tree on January 25, 2019 by an assignment agreement. *Id*. ¶ 17. Red Tree alleges that Defendants first failed to make a payment due under the Credit Agreement on November 15, 2017. *Id*. ¶¶ 14-15.

3

## II.     PROCEDURAL HISTORY

The instant actions were commenced by motion for summary judgment in lieu of a complaint in the Supreme Court of the State of New York, New York County. *Red Tree 1* Dkt. No. 3; *Red Tree 2* Dkt. No. 5. On March 21, 2019, Defendants timely removed the instant actions to this Court.  *Red Tree 1* Dkt. No. 1; *Red Tree 2* Dkt. No. 5. In March 2019, Defendants moved for a stay of all proceedings in light of the political uncertainty in Venezuela. *Red Tree 1* Dkt. Nos. 9-11; *Red Tree 2* Dkt, Nos. 10-12. Since January 23, 2019, the United States has recognized President Juan Guaidó's government as the only legitimate government of Venezuela. *Red Tree 1* Dkt. No. 10; *Red Tree 2* Dkt. No. 11. Nevertheless, the illegitimate Nicolás Maduro regime has refused to cede power and has prevented the Guaidó government from accessing government information and records. *Red Tree 1* Dkt. No. 65; *Red Tree 2* Dkt. No. 66. This ongoing conflict has precluded Defendants' access to all documents, electronic records, or personnel of PDVSA and Petróleo. *Red Tree 1* Dkt. No. 99; *Red Tree 2* Dkt. No. 100.

By order dated May 6, 2019, this Court granted Defendants' motion and stayed the proceedings for a period of 120 days. *Red Tree 1* Dkt. No. 33; *Red Tree 2* Dkt. No. 33. This Court reasoned that Defendants' "substantial interest in securing access to relevant facts and personnel," and "[t]he judicial interest in favor of resolving cases on their merits" outweighed Red Tree's interests. *Id*.

 On August 5, 2019, before the 120 day stay period expired, Red Tree moved to lift the stay. *Red Tree 1* Dkt. No. 36; *Red Tree 2* Dkt. No. 36. Defendants opposed that motion on the grounds that Red Tree failed to demonstrate any non-speculative prejudice that outweighed the

substantial interests the Court cited when modifying its prior order, among other reasons. *Red Tree 1* Dkt. No. 39; *Red Tree 2* Dkt. No. 39.

In its September 3, 2019 status report to the Court, Defendants explained that the circumstances that led the Court to grant its motion for a stay still existed. Defendants therefore requested that the stay be extended for an additional 120 days. *Red Tree 1* Dkt. No. 42.; *Red Tree 2* Dkt. No. 42. Red Tree opposed Defendants' request to extend the stay and asked the Court to schedule a status conference to discuss its pending motion to lift the stay. *Red Tree 1* Dkt. No. 44; *Red Tree 2* Dkt. No. 44. On September 13, 2019, this Court denied Red Tree's request for a status conference and set a briefing schedule for Defendants' motion for an additional 120 day stay. *Red Tree 1* Dkt. No. 48; *Red Tree 2* Dkt. No. 48.

Defendants thereafter moved for an additional stay or, in the alternative, the opportunity to seek discovery, pursuant to Fed. R. Civ. P. 56(d). *Red Tree 1* Dkt. Nos. 49-51; *Red Tree 2* Dkt. Nos. 49-51. Red Tree opposed that motion. *Red Tree 1* Dkt. No. 52; *Red Tree 2* Dkt. No. 52. On January 14, 2020, this Court denied Defendants' motion for an additional stay, but granted Defendants permission "to more fully brief their Rule 56(d) request – and support it with a sufficient Rule 56(d) affidavit of declaration – should they choose to do so." *Red Tree 1* Dkt. No. 57; *Red Tree 2* Dkt. No. 58.

Following this Court's January 14, 2020 order, Defendants conferred with Red Tree's counsel to see if the parties could reach an agreement to engage in limited discovery of relevant documents and information in an effort to forego additional motion practice; however, no agreement could be reached. Red Tree refused to agree to the scope of discovery sought by Defendants, despite its relevance to the underlying claims and defenses. Defendants then fully

briefed this Court on their Rule 56(d) request in February 2020. *Red Tree 1* Dkt. No. 64-66, 70; *Red Tree 2* Dkt. No. 65-67, 71.

On June 1, 2021, this Court granted Defendants' Rule 56(d) motion, *Red Tree 1* Dkt. No. 99; *Red Tree 2* Dkt. No. 100, allowing Defendants one month to complete discovery, which was subsequently extended twice: first, to July 8, 2021, by order dated June 9, 2021; and second, by order dated July 7, 2021, to July 15, 2021 for domestic discovery and August 2, 2021 for foreign discovery. *Red Tree 1* Dkt. Nos. 102, 112; *Red Tree 2* Dkt. Nos. 102, 113.

On July 9, 2021, this Court granted Defendants' motion to issue letters of request for international judicial assistance to obtain discovery from two foreign third parties: Zuma Bank of Dominica and SACE of Italy. *Red Tree 1* Dkt. No. 113; *Red Tree 2* Dkt. No. 114. The letters were signed and issued by this Court on July 14, 2021. *Red Tree 1* Dkt. No. 113; *Red Tree 2* Dkt. No. 114. Defendants then promptly caused the letters of request to be sent to the appropriate central authority in Dominica and Italy, respectively. Defendants also served document subpoenas on third-parties Deutsche Bank Trust Company Americas ("Deutsche Bank"), Wells Fargo Securities, LLC ("Wells Fargo"), GE Capital and GE EFS (together, "GE"). Ultimately, Defendants received documents from all of the requested third-parties, except SACE.

## III.    DEFENDANTS LACK ACCESS TO ALL RELEVANT DOCUMENTS

A significant factor affecting Defendants' ability to defend this case is the current political crisis in Venezuela. The government of Interim President Juan Guaidó, which is the only legitimate government of Venezuela, has no access to the personnel or documents of PDVSA or Petróleo. This problem has been partially mitigated by Defendants' discovery of documents in the possession of plaintiff and certain third parties, but there remain significant gaps in information.

For example, some of the most critical information is in the possession of GE, which was the initial noteholder. Defendants are still missing critical documents from GE. Initially, as part of

6

its effort to prevent Defendants from pursuing any discovery, Red Tree represented in a letter to the Court that it had "voluntarily collect[ed] all conceivably relevant documents from the original Noteholder GE Capital EFS" and provided those documents to the Defendants. *Red Tree 1* Dkt. No. 76; *Red Tree 2* Dkt. No. 77. That clearly was not the case. In response to the recent subpoenas, Defendants received 171 additional highly relevant documents from GE—many of which reflected difficulties that PDVSA encountered trying to make payments to GE in light of U.S. sanctions.

Despite receiving these additional documents from GE, it is clear that Defendants still do not have a complete set of relevant documents. Documents produced by GE show an abundance of e-mail and other correspondence from October 2017 regarding late, missing, or rejected payments from PDVSA. *See e.g.*, Ducharme Decl. Exhs. A-C.[1] But in stark contrast to the flurry of email traffic from October 2017, GE provided almost no correspondence at all from December 2017, during which PDVSA is alleged to have defaulted on the 2016 Note. Daniel Wallitt, the former Managing Director at GE EFS, could not, in his deposition, explain why that correspondence would not exist. Exh. M at 80:15-81:3.

Because the productions are demonstrably missing documents critical to Defendants' defense, and because Defendants lack access to their own documents and witnesses, a grant of summary judgment would violate Defendants' due process rights. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 925 (2d Cir. 1985) (holding that "a denial of access to relevant information weighs in favor of the party opposing a motion for summary judgment").

---

[1] "Ducharme Decl." refers to the Declaration of Matthew A. Ducharme in Opposition to Plaintiff's Motion for Summary Judgment in Lieu of Complaint, dated August 16, 2021, submitted herewith. Hereafter, all references to the exhibits listed within the Declaration will be prefaced only by "Exh."

Despite the absence of critical documents, however, the documents that have been received in discovery, albeit incomplete, clearly demonstrate that Defendants can establish all of the necessary elements of an impossibility defense.

## ARGUMENT

### I.      RELEVANT LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted).

A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citations omitted). "[T]he evidence of the

---

[2] Upon removal, a motion for summary judgment in lieu of complaint is converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See Valley Nat'l Bank v. Oxygen Unlimited, LLC*, No. 10 Civ. 5815 (GBD), 2010 WL 5422508, at *2 (S.D.N.Y. Dec. 23, 2010) ("Plaintiff's motion for summary judgment in lieu of complaint will be treated as a motion for summary judgment made under Rule 56 of the Federal Rules and the papers already submitted to be a complaint and answer.").

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."
*Anderson*, 477 U.S. at 255 (citation omitted).

Under New York law, to make out a prima facie case for recovery on a promissory note "a plaintiff must simply show proof of a note and failure to make payment." *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 470 (S.D.N.Y. 2006) (citation omitted). "When a note holder has established a *prima facie* claim, the burden shifts to the defendant to prove the 'existence of a triable issue of fact in the form of a bona fide defense against the note.'" *Id.* (citation omitted).

## II.   TRIABLE ISSUES OF MATERIAL FACT EXIST WITH RESPECT TO DEFENDANTS' IMPOSSIBILITY DEFENSE.

Triable issues of material fact exist with respect to whether circumstances outside of Defendants' control made it impracticable, if not impossible, for Defendants to perform their obligations under the note and credit instruments. "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged unless the language or the circumstances indicate the contrary." Restatement (Second) of Contracts § 261. "In general impossibility may be equated with an inability to perform as promised due to intervening events, such as an act of state or destruction of the subject matter of the contract." *United States v. Gen. Douglas MacArthur Senior Vill., Inc.*, 508 F.2d 377, 381 (2d Cir. 1974). To establish a defense of impossibility in New York, a defendant must show: "(1) 'the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible' and (2) the impossibility was 'produced by an unanticipated event that could not have been foreseen or guarded against in the contract.'" *Cai*

9

*Rail, Inc. v. Badger Mining Corp.*, No. 20 CIV. 4644 (JPC), 2021 WL 705880, at *7 (S.D.N.Y. Feb. 22, 2021) (quoting *Kel Kim Corp. v. Cent. Mkts., Inc.*, 519 N.E.2d 295, 296 (N.Y. 1987)).

The United States imposed sanctions on Defendants beginning in 2017. These sanctions prohibited certain debt-related financial transactions and blocked the transfer of Defendants' assets within the United States. Defendants' performance of their payment obligations under the Agreements was rendered impossible because, as a result of these sanctions, banks adopted policies for assessing transactions involving PDVSA and other Venezuelan government-related entities that caused PDVSA's payment attempts to be rejected.

### A. The United States Issued Sanctions Against Defendants That Prevented Defendants from Engaging in Certain Financial Transactions with a United States Nexus.

On August 25, 2017, the United States issued Executive Order 13808 ("E.O. 13808"), which prohibits certain financial dealings with Venezuelan government entities, including Defendants, that occur in the United States or involve United States persons.[3] Among other restrictions, it specifically prohibits the creation of any new debt on or after August 25, 2017 with PDVSA or the "Venezuelan Government," including Petróleo. Under the Executive Order, the "Government of Venezuela" includes any person owned or controlled by, or acting for or on behalf of, the Government of Venezuela.[4] Petróleo is captured by this restriction as it is owned, indirectly, by the Government of Venezuela, and owned 50% or more by PDVSA. *See* 31 C.F.R. § 591.406.

E.O. 13808 prohibits United States persons from engaging in transactions related to, providing financing for, or otherwise dealing in new debt with PDVSA or Petróleo. Accordingly, the E.O. bans any financial institution with a presence in the United States from participating in

---

[3] *See* Exec. Order No. 13808, 82 Fed. Reg. 41155 (Aug. 25, 2017).
[4] *Id*. § 3(d).

any transfer of funds related to a new debt with Defendants. It also prohibits Defendants' new

debt transactions that seek to clear United States dollars through the United States financial

system.

This implicates the 2015 Note Agreement, 2016 Note Agreement, and the Credit

Agreement, because each instrument possesses a clear United States nexus. Each requires

PDVSA, as issuer, to make payments under the instruments "solely and exclusively in [United

States] Dollars." *Red Tree 1* Dkt. No. 25-4 at 13-14, Dkt. No. 25-8 at 14; *Red Tree 2* Dkt. No.

26-4 at 20. Additionally, with the exception of payments to SACE on the R-3 Note, payments on

each instrument were to be made originally to GE EFS, a United States entity, and now allegedly

to Red Tree, also a United States entity. Payments to GE EFS were transferred to its account at

the United States branch of Deutsche Bank. Exh. J at ZUMA_0000158.

On November 1, 2018, the U.S. government issued Executive Order 13850 ("E.O.

13850"), imposing additional Office of Foreign Assets Control ("OFAC") sanctions on

Venezuela-related entities.[5] Under E.O. 13850, Venezuelan government assets in the United

States, that come into the United States, or that are in the possession of a United States person

are "blocked," and may not be transferred or paid without a general or specific license from

OFAC.

On January 28, 2019, pursuant to E.O. 13850, OFAC designated PDVSA as a

Specially Designated National and Blocked Person ("SDN"). As a result of that designation, all

PDVSA property and interests in property, including those of Petróleo,[6] that are in the United

States, that come within the United States, or that are under the possession or control of any U.S.

---

[5] *See* Exec. Order No. 13850, 83 Fed. Reg. 55243 (Nov. 1, 2018).
[6] Under OFAC's interpretation, an entity owned 50% or more by one or more blocked persons is itself blocked. *See* OFAC Frequently Asked Question 401, U.S. Department of the Treasury, available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs (last visited Aug. 16, 2021).

persons, are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in

without authorization from OFAC. Concurrently with this designation, OFAC issued a license

that permitted certain debt-related transactions with Defendants. General License 9 authorized

"transactions and activities…that are ordinarily incident and necessary to dealings in any debt,"

as long as that debt was issued by Defendants prior to August 25, 2017.[7] This authorization,

however, does not include pre-existing debt that was modified or renegotiated on or after August

25, 2017.[8]

**B. Defendants' Performance of Its Payment Obligations Was Rendered Impossible Because Banks Were Unwilling to Process Payments From PDVSA Due to Risks Arising From U.S. Sanctions.**

In light of E.O. 13808 and E.O. 13850, any bank handling a United States-related

transaction involving Defendants would have to perform sufficient due diligence to ascertain that

the proposed payment is not prohibited under OFAC sanctions. United States financial

institutions, as well as international institutions that do business in the United States, conduct

risk-based reviews to determine whether to process these transactions. *See e.g.*, Exh. K at 15. As

a practical matter, banks may reject payments from PDVSA or Petróleo, even if not technically

illegal under OFAC sanctions, to mitigate compliance risk.

Indeed, Defendants faced tremendous difficulty in making payments under the

Agreements after the imposition of E.O. 13808. For example, in light of the sanctions, Deutsche

Bank implemented a policy to reject all PDVSA payments when acting as an intermediary bank.

Exh. D at GE_000014411. This led to Deutsche Bank rejecting payment from PDVSA on at least

---

[7] General License 9. *Authorizing Transactions Related to Certain Dealings in Debt*, Department of the Treasury (Jan. 28, 2019), available at https://home.treasury.gov/system/files/126/venezuela_gl9.pdf (last visited August 16, 2021)

[8] *See* OFAC Frequently Asked Question 514, U.S. Department of the Treasury, available at https://home.treasury.gov/policy-issues/financial-sanctions/faqs (last visited Aug. 16, 2021).

two occasions. On September 29, 2017, PDVSA attempted to make a payment on the 2016 Note Agreement through Deutsche Bank as an intermediary bank, but Deutsche Bank rejected the payment due to risk of sanctions noncompliance. Exh. E at GE_000014352. Additionally, on October 4, 2017, Deutsche Bank's Sanctions/Compliance team rejected and returned an attempted payment by Defendants on the Credit Agreement due to noncompliance with the bank's "internal policy." Exh. A at GE_000014092. Only after pressure from GE, a top client of the bank, were the funds approved, resubmitted, and transferred. *See* Exh. F.

GE itself acknowledged the difficulties sanctions imposed on Defendants' ability to make payments. On December 4, 2017, Defendants sent a letter to GE requesting additional time to make payments due on the Credit Agreement. As a result of E.O. 13808, the letter explained, "PDVSA has been materially affected in its ability to timely satisfy the payments derived from the Credit Agreement" because the "sanctions are unfortunately impacting the timing of transfers." Exh. G. The GE response letter sent by Mr. Wallitt acknowledged and agreed that "political developments in recent months have created logistical difficulties for [Defendants] in the making and processing of payments…" Exh. H at GE_000014162. In his deposition, Mr. Wallitt clarified that by "political developments" he did, in fact, mean United States sanctions. Exh. M at 52:11-53:8.

Despite having some success in convincing banks to process payments after the imposition of E.O. 13808, Defendants eventually were unable to make any further payments because PDVSA's bank refused to continue processing payments in light of the risks arising out of the sanctions in place. Indeed, on March 21, 2018, Defendants attempted to make a payment on the Credit Agreement, but that payment was rejected by Zuma Bank as a violation of its internal compliance policies "due to risks arising out of the imposition of United States

sanctions on financial transactions with Venezuelan government entities, including Defendants, that occur in the United States or involve United States persons." Exh. J ¶ 7; J at ZUMA_0000147-153; L at ZUMA_0000147-153. Whether or not the particular payment complied with OFAC sanctions, Zuma Bank refused to process the payment as a matter of internal policy. This rejection provides evidence that, although banks may have initially processed Defendants' payments after the imposition of sanctions, as Zuma Bank did, this does not mean that banks would continue to do so. Exh. J at ZUMA_0000158. Tellingly, prior to the imposition of sanctions, PDVSA paid each and every one of the payments due under the Agreements. As such, based on the limited documents received in discovery—the only documents available to Defendants concerning this action—it is apparent that Defendants were unable to make payments in the form and manner required by the Agreements due to internal policies instituted at banks as a result of United States sanctions.

In sum, the documents and information received in discovery demonstrate that Defendants can satisfy each of the elements of an impossibility defense. The repeated payment attempts by PDVSA demonstrate that PDVSA did everything within its power to satisfy its payment obligations under the Agreements. *See Transfield ER Cape Ltd. v. STX Pan Ocean Co.*, No. 09 CIV. 1250 (JGK), 2009 WL 691273, at *3 (S.D.N.Y. Mar. 17, 2009) (noting that defendant may "prove that it exhausted its attempts to perform on the Agreement before failing to pay" to satisfy requirement of "demonstrate[ing] that it took virtually every action within its powers to perform its duties under the contract" (citations omitted)). Defendants' inability to make payments in the manner required by the Agreements, as a result of internal bank policies, clearly satisfies the "destruction of . . . the means of performance" element of a successful impossibility defense. *See Kel Kim Corp.*, 519 N.E.2d at 296. And lastly, the events causing

Defendants' impossibility—the policies adopted by banks to ensure compliance with U.S. sanctions—were unanticipated and were not foreseen or guarded against in the Agreements.[9] *See Kel Kim Corp.*, 519 N.E.2d at 296. As such, at the very least, there remains a genuine issue of material fact as to whether it became impossible after the imposition of E.O. 13808 and the resulting compliance policies adopted at financial institutions for Defendants to continue making payments under the Agreements.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Red Tree's motion for summary judgment in lieu of complaint in its entirety and grant such other and further relief to Defendants as it deems just and proper.

---

[9] Defendants are not at fault for the underlying sanctions that led to the banking policies that rendered its performance impossible.  Rather, those sanctions were directed at the illegitimate Maduro regime. The U.S. government imposed the sanctions outlined in Executive Order 13808:

> [I]n light of recent actions and policies of the Government of Venezuela, including serious abuses of human rights and fundamental freedoms; responsibility for the deepening humanitarian crisis in Venezuela; establishment of an illegitimate Constituent Assembly, which has usurped the power of the democratically elected National Assembly and other branches of the Government of Venezuela; rampant public corruption; and ongoing repression and persecution of, and violence toward, the political opposition . . . .

Exec. Order No. 13808, 82 Fed. Reg. 41155.

Dated: August 16, 2021

Respectfully submitted,

HOGAN LOVELLS US LLP

/s/ Dennis H. Tracey III
Dennis H. Tracey, III
Matthew A. Ducharme
390 Madison Avenue
New York, NY 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
matthew.ducharme@hoganlovells.com

Richard C. Lorenzo (pro hac vice)
600 Brickell Avenue,
Suite 2700
Miami, FL 33131
Tel: (305) 459-6500
Fax: (305) 459-6550
richard.lorenzo@hoganlovells.com

*Counsel for Defendants Petróleos de*
*Venezuela, S.A. and PDVSA Petróleo,*
*S.A*