UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RED TREE INVESTMENTS, LLC,

                      Plaintiff,

      -against-                                  19-cv-2519 (PKC)
                                                              19-cv-2523 (PKC)

PETRÓLEOS DE VENEZUELA, S.A. and                OPINION AND ORDER
PDVSA PETRÓLEO, S.A.,

                      Defendants
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        These two actions seek to recover monies alleged to be due and owing to plaintiff Red Tree Investments, LLC ("Red Tree") by Petróleos de Venezuela, S.A. ("PDVSA") under the terms of two note agreements and notes issued thereunder and a credit agreement. Red Tree sues PDVSA Petróleo, S.A ("Petróleo") as the guarantor of PDVSA's payment obligations. PDVSA and Petróleo are instrumentalities of the Venezuelan government. Red Tree has moved for summary judgment against both defendants in both actions. The principal basis for opposing summary judgment is that sanctions on Venezuelan-related activities and persons coupled with the risk-adversity of the banking community rendered it impossible or highly impracticable for PDVSA to pay what it owed.

        For reasons that will be explained, the Court concludes that PDVSA is in default on lawful obligations owed to Red Tree and, accepting the facts in a light most favorable to PDVSA, it has failed to come forward with facts if believed that would entitle them to judgment. Petróleo has failed to come forward with facts, if believed, that would amount to a defense under the guaranty. Red Tree's motions will be granted.

BACKGROUND

General Electric Capital Corporation ("GECC") was the initial noteholder—or lender—under a 2015 Note Agreement with defendants, and GE Capital EFS Financing Inc. ("GECEFSF") was the initial noteholder under the 2016 Note Agreement with defendants (collectively, "GECC" and "GECEFSF" are referred to as the "GE Entities").  PDVSA was the issuer and Petróleo was the guarantor under notes issued pursuant to the two agreements. The original principal balance under the three notes issued pursuant to the 2015 Note Agreement and 2016 Note Agreement was approximately $450 million. On January 25, 2019 the notes were assigned to Red Tree.  The total amount owed to Red Tree under the three notes is approximately $63.5 million plus unpaid interest.

GECEFSF, as lender, also entered into a Credit Agreement with PDVSA as borrower, and Petróleo, as guarantor (the "2016 Credit Agreement") in which GECEFSF agreed to extend loans to PDVSA in an aggregate principal amount not to exceed $96.9 million. The rights under the Credit agreement were assigned to Red Tree on January 25, 2019. Red Tree claims to be owed $65 million in principal plus interest under the Credit Agreement.

PROCEDURAL HISTORY

These actions were commenced in New York state court through the device of motions for summary judgment in lieu of complaint, a procedure permitted under NY CPLR § 3213.   Defendants removed the actions to federal court.[1] Defendants asserted basis for subject matter jurisdiction was that they were actions against a "foreign state," asserting that each defendant is an "instrumentality" of the Bolivarian Republic of Venezuela.  28 U.S.C.

---

[1] The action premised on the Notes issued pursuant to the Note Agreements is docketed under 19 cv 2519 (the "Note Agreement Action") and the action premised on the Credit Agreement is docketed under 19-cv-2523 (the "Credit Agreement Action").

§§ 1332(a)(4) & 1603.  Alternatively, defendants invoked diversity of citizenship as a basis for subject matter jurisdiction.  28 U.S.C. § 1332(a)(2).

Shortly after removal, defendants moved to stay the actions for 120 days because of political instability in Venezuela.  At the time of the motions the United States had recognized the government of Juan Guaidó as Interim President of Venezuela but, according to defendants, the new government lacked full access to personnel and documents.  On May 19, 2019, the judge to whom the cases were then assigned granted a 120-day stay.  As a practical matter, the stay remained in place until January 14, 2020 when the judge rejected defendants' motions to further extend the stay.

Defendants applied to the Court to defer their opposition to the summary judgment motions to enable them to obtain discovery.  Red Tree, with the cooperation of the GE Entities, voluntarily produced responsive documents, totaling over 13,000 pages.  The Court issued an Order on June 1, 2021, acknowledging that certain of defendants' original requests had become moot, but allowing defendants an additional month to seek documents.  In early June 2021, the period was extended to July 8, 2021.  The date for completion of domestic discovery was again extended to July 15, 2021 and foreign discovery to August 16, 2021.

Two years and four months following defendants' removal of the actions to this Court, defendants filed their oppositions to the motions.  Briefing was completed on August 30, 2021 and the actions were reassigned to the undersigned on December 10, 2021.

SUMMARY JUDGMENT STANDARD

Following removal from state court, the Federal Rules of Civil Procedure apply.  Rule 81(c)(1), Fed. R. Civ. P.  Thus, Red Tree's pre-removal motions for summary judgment in lieu of complaint, NY CPLR §3213, are properly considered under Rule 56, Fed. R. Civ. P.  See, e.g., Beaufort Cap. Partners LLC v. Oxysure Sys., Inc., No. 16-cv-5176, 2017 WL 913791, at *2 (S.D.N.Y. Mar. 7, 2017) (Oetken, J.) (collecting cases).

Under Rule 56(d), Fed. R. Civ. P., "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time . . . to take discovery; or (3) issue any other appropriate order."  The Court's ruling on an application under Rule 56(d) is reviewed under an abuse of discretion standard.  See, e.g., Moccia v. Saul, 820 F.App'x 69, 70 (2d Cir. 2020).

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248).  On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable

inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks omitted).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.' " Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Soc'y, 575 F.3d at 204 (internal citations omitted).

DISCUSSION

Under New York law,[2] to recover on a note or other debt instrument "a plaintiff must show the existence of a promissory note executed by the defendant containing an unequivocal and unconditional obligation to repay and the failure of the defendant to pay in accordance with the note's terms." Zyskind v. FaceCake Mktg. Techs., Inc., 101 A.D.3d 550, 551 (1st Dep't 2012). "Once the plaintiff submits evidence establishing these elements, the burden shifts to the defendant to submit evidence establishing the existence of a triable issue with respect to a bona fide defense." Id.; see Camofi Master LDC v. Coll. P'ship, Inc., 452 F. Supp. 2d 462, 470 (S.D.N.Y. 2006) (Chin, J.). To recover on a guaranty, the plaintiff must come forward with evidence of "the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty. . . ." Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro, 25 N.Y.3d 485, 492 (2015); Sarfati v. Palazzolo, 142 A.D.3d 877, 877 (1st Dep't 2016); see also UMB Bank N.A. v. Bluestone Coke, LLC, No. 20-cv-2043, 2020 WL 6712307 at *4 (S.D.N.Y. 2020) (Liman, J.).

In the Note Agreement Action, Red Tree came forward with an attorney's affidavit placing into the record on the motion the 2015 Note Agreement, the 2016 Note Agreement, the notes, the assignments from the GE Entities to Red Tree and notices to PDVSA of the assignments.

Red Tree presented an affidavit of a Managing Director of GE Capital attesting to the 2015 Note Agreement, the relationship between GE Capital and GECEFSF, the maturation of the notes under the 2015 Note Agreement, and the assignment of the notes to

---

[2] In is undisputed that the instruments at issue have New York choice of law provisions.

Red Tree. He attests that, as of the time of assignment, there was an outstanding principal balance of $21,379,633.74, as well as unpaid interest, pursuant to the 2015 Note Agreement.

Red Tree also came forward with the affidavit of a Managing Director of GECEFSF with knowledge of PDVSA's defaults under the 2016 Note Agreement and notice of those defaults. He attested to the fact of the default and the principal amount due under the 2016 Agreement of $96,979,881.49 plus unpaid interest.

In the Credit Agreement Action, Red Tree made a similar showing. Red Tree came forward with the 2016 Credit Agreement between and among GECEFSF, PDVSA and Petróleo and an affidavit attesting to four disbursements of funds to PDVSA pursuant to the agreement, default, notice of the default, assignment and notice of assignment. The affidavit set forth an unpaid balance of $63,500.02 of principal plus accrued, unpaid interest.

In each instance under the 2015 and 2016 Note Agreements, Red Tree has met its initial summary judgment burden by showing that the notes and the borrowings were pursuant to duly executed instruments, the obligation to pay under those instruments was unequivocal and there was a failure to pay in accordance with the terms of the instruments.

In the case of Petróleo, as to each debt instrument, Red Tree has produced evidence of the existence of the guaranty of each debt, the existence of each debt owed by PDVSA and Petróleo's failure to pay on each guaranty despite due demand.

The evidentiary showing of defendants is notable for what it does not dispute. It does not dispute the existence or validity of the notes issued pursuant to the 2015 and 2016 Note Agreements, the defaults, the assignments or notices of the foregoing. The same is true as to the existence and enforceability of the 2016 Credit Agreement, the borrowings, the defaults, assignment and notices.

Defendants' sole basis for opposing summary judgment is succinctly summarized in their opposition brief: "There is no question that PDVSA had every intention of repaying the full amount of each instrument. But the imposition of U.S. sanctions made it impossible to do so." (D. Mem. at 2.) No argument independent of PDVSA's position is advanced by Petróleo for non-payment on the guaranty.

A.  New York's Impossibility Doctrine.

Under New York law, "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible." Kel Kim Corp. v. Central Markets, Inc., 70 N.Y.2d 900, 902 (1987). The impossibility must be the product of "an unanticipated event that could not have been foreseen or guarded against in the contract. . . ." Id. An "act of state" may render performance impossible. United States v. Gen. Douglas MacArthur Senior Vill., Inc., 508 F.2d 377, 381 (2d Cir. 1974). The New York Court of Appeals has cautioned that the impossibility defense should be "applied narrowly, due in part to judicial recognition that the purpose of contract law is to allocate the risks that might affect performance and that performance should be excused only in extreme circumstances." Kel Kim Corp., 70 N.Y.2d at 902.

1. The Executive Orders and Action by OFAC.

In a recent decision, Judge Stanton of this Court recounted the Venezuelan sanctions regime on which defendants rely to establish their impossibility defenses. and Dresser-Rand Co. v. Petróleo de Venezuela, S.A., No. 19-cv-2699 (S.D.N.Y. Dec. 9, 2021) (Stanton, J.). This Court need only briefly summarize.

On August 25, 2017 the President of the United States issued Executive Order ("E.O.") 13808 that prohibited "a United States person" or anyone acting "within the United States" from, among other things, providing "financing for" or engaging in "dealings in" "new debt" of PDVSA with a maturity date of greater than 90 days.[3]

The term "new debt" as used in E.O. 13808 was reasonably clear in meaning. By its plain language, it did not apply to preexisting debt. Any possible doubt was resolved on February 12, 2018 when the Office of Foreign Assets Control ("OFAC") issued an interpretative statement, provided as follows:

> OFAC does not consider debt that was created prior to August 25, 2017 to be "new debt" for purposes of E.O. 13808 so long as the terms of the debt instrument (including, for example, the length of the repayment period or any interest rate applied) agreed to by the parties do not change on or after August 25, 2017. Such preexisting debt does not need to conform to the 30- or 90-day tenors imposed under E.O. 13808, and U.S. persons may collect and accept payment for such debt regardless of whether the relevant segment of the Government of Venezuela, including PdVSA, pays during the agreed-upon payment period.

OFAC, Frequently Asked Questions, No. 553, issued Feb. 12, 2018.[4]

On November 18, 2018, the president issued E.O. 13850 that blocked a "United States person" from, among other things, transferring, paying or otherwise dealing in the "property and interests" of blocked persons.[5] On January 28, 2019, OFAC designated

---

[3] "Section 1. (a) All transactions related to, provision of financing for, and other dealings in the following by a United States person or within the United States are prohibited:(i) new debt with a maturity of greater than 90 days of Petroleos de Venezuela, S.A. (PdVSA);
(ii) new debt with a maturity of greater than 30 days, or new equity, of the Government of Venezuela, other than debt of PdVSA covered by subsection (a)(i) of this section; . . . ."

E.O. 13808, 82 Fed. Reg. 41155.

[4] https://home.treasury.gov/policy-issues/financial-sanctions/faqs/topic/1581 (last accessed Dec. 19, 2021).
[5] 83 Fed. Reg. 55243 (https://home.treasury.gov/system/files/126/venezuela_eo_13850.pdf (last accessed Dec. 19, 2021)).

-9-

PDVSA as a blocked person under E.O 13850 and simultaneously issued General License 9.[6] The license provided that transactions and activities prohibited by E.O. 13808 and E.O. 13850 "that are ordinarily incident and necessary to dealings in any debt (including . . . promissory notes, and other receivables) of Petr6leos de Venezuela, S.A. (PdVSA) or any entity in which PdVSA owns, directly or indirectly, a 50 percent or greater interest (together, PdVSA-related debt), issued prior to August 25, 2017 (the effective date of E.O. 13808), are authorized . . . ." General License 9 at ¶a (non-relevant exceptions omitted). No party disputes, indeed, defendants affirmatively assert that Petróleo is owned 50% or more by PDVSA and covered by the license. (D. Mem. in Op. at 11.)

          2. Defendants' Failure to Come Forward with Facts That Would Enable a Fact Finder to Find in Their Favor.

To establish impossibility, defendants offer an exchange between PDVSA and one of the GE Entities in late 2017. Explaining a delay in payment, PDVSA wrote: "[t]hese sanctions are unfortunately impacting the timing of transfers which are legitimate and permissible under all applicable laws, as the correspondent financial institutions take longer to process routine transfers involving PDVSA." (Ducharme Decl., Ex. F.) An individual within the GE Entities with responsibility for the relationship with PDVSA responded on December 8, 2017 as follows: "We acknowledge that political developments in recent months have created logistical difficulties for the Borrower in the making and processing of payments, but the continued delays by Borrower in making payments have real financial implications for the Lenders." (Id., Ex. G.) In sworn testimony, the letter's writer acknowledged that in referring to the "political developments," he meant the sanctions.

---

[6] https://home.treasury.gov/system/files/126/venezuela_gl9.pdf (last accessed Dec. 19, 2021).

Defendants also rely on two instances in which Deutsche Bank as an intermediary bank initially declined to process payment. The first instance was an attempted payment relating to the 2016 Note Agreement in or about September 27, 2017, and the second was a payment relating to the Credit Agreement in or about October 4, 2017. Defendants make no claim that it would have been unlawful under the Executive Orders for a bank to receive payments due under the debt instruments. Rather, it argues that the bank had a risk-adversity to processing payments that required interpretation and application of the language of the Executive Orders and related interpretive documents. The Court accepts as true and draws the reasonable inference in favor of defendants that the initial rejections by Deutsche Bank were because of the risk-adversity relating to the sanctions. But defendants' claim of impossibility is fatally undermined by defendants' acknowledgement that "[o]nly after pressure from GE, a top client of the bank, were the funds approved, resubmitted, and transferred." (D. Mem. in Op. at 12.)[7] This demonstrates that Deutsche Bank was persuaded that it was lawful to transfer the funds and did so. These payments were not impossible. In fact, they were made.

Defendants also present the affidavit of the president and CEO of Zuma Bank, located in the Commonwealth of Dominica, who attests that the bank declined to process requested payments by PDVSA "due to risks arising out of United States sanctions. . . ." (Gonzalez Decl. ¶¶ 7, 11.) But the affidavit demonstrates that after the issuance of E.O. 13808 on August 25, 2017, Zuma Bank successfully processed two payments for PDVSA to

---

[7] The email chain on which defendants rely (Ducharme Decl., Ex. F) does establish that there were communications between one of the GE Entities and Deutsche Bank concerning the payments but does not establish that the GE Entities applied "pressure" or that they were a "top client" of the bank. Exhibit D to the Ducharme Declaration reflects nothing more than polite inquiries by the GE Entities. Nevertheless, the Court draws the inference that defendants seek to have this Court draw, i.e. that the GE Entities were a top client who applied pressure.

the GE Entities through the account of GECSFSF at Deutsche Bank Trust Company Americas (USA) on September 25, 2017 and March 12, 2018.  (Id. ¶ 6.)  Zuma Bank's "Compliance" department rejected a third payment on April 13, 2018.  No claim is made by defendants or Zuma Bank that it would have been unlawful to process payments.

It is not Red Tree's burden to disprove the affirmative defense of impossibility.  Rather, it is defendants' burden to come with evidence which if believed would entitle them to judgment in their favor on the affirmative defense.  Considering the 2017 exchange of letters between PDVSA and the GE Entities, the two temporarily thwarted payments through Deutsche Bank that were eventually resubmitted in a different manner and paid, the Zuma Bank rejection of processing a payment due to its adversity to risks arising from the sanctions, and a general attitude among financial institutions of risk adversity to transactions conceivably touching upon sanctions, no reasonable jury could find in defendants' favor on their impossibility defense.  As PDVSA has admitted in its correspondence with the GE Entities (Ducharme Decl., Ex. F), payments to Red Tree or its predecessor were not barred by the sanctions.  Initially, this was because it was not new debt issued after August 17, 2017, the date of E.O. 13808.  Later and simultaneous with the January 2019 designation of defendants as blocked persons, General License 9 was issued which allowed payments on debts incurred prior to August 17, 2017.

The Court accepts that many or most banks would require clarity on sanctions before processing payments.  But PDVSA has come forward with no evidence of the ways in which it endeavored to assure financial institutions that processing its payments was lawful.  For example, it has not shown that it sought to obtain an opinion from a reputable counsel in the United States that payment would not violate the sanctions or to post a letter of credit or

indemnity for any losses by a financial institution.[8] It has not shown that it was unable to encourage uncooperative banks to avail themselves of OFAC's robust interpretative guidance program, which includes publishing answers to Frequently Asked Questions about sanctions and licenses in general and specific to Venezuela. While General License 9 was clear on its face, it could have sought an even more explicit license from OFAC if it thought it necessary. See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) (rejecting a New York law impossibility defense by party who on an appeal from grant of summary judgment "makes no claim that it took virtually every action within its power to perform its duties under the contract and therefore cannot assert the defense of impossibility."),[9] Kel Kim Corp., 70 N.Y.2d at 902 ("Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible.")

        3.   The Sanctions Were Foreseeable and Addressable in the Agreements.

As alternative grounds for granting summary judgment against PDVSA, the Court concludes that defendants have failed to demonstrate that the sanctions were not reasonably foreseeable.

The New York Court of Appeals decision in Kel Kim Corp., 70 N.Y.2d at 902, makes it plain that "the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract. . . ." See also Ogdensburg Urb. Renewal Agency v. Moroney, 42 A.D.2d 639, 640 (3d Dep't 1973) ("[T]he defense of impossibility is only available where the performance is rendered impossible by the happen-

---

[8] For example, the 2015 Note Agreement requires the delivery of an opinion of counsel from a named law firm on certain points of New York, federal and Venezuelan law. (2015 Note Agreement at §4.01(a).)
[9] The Court does not read Health-Chem to require that a party asserting impossibility exhaust every conceivable avenue to perform, including those with only a remote chance of succeeding.

ing of an unanticipated event which could not be foreseen or guarded against in the contract. . . .")  Defendants, the party with the burden of proof, have not demonstrated any circumstance that could not have been foreseen or guarded against in the contract.

The first of the debt instruments in these actions, the 2015 Note Agreement, was executed on March 27, 2015, a date that is significant for the events that occurred a few weeks before.  On March 8, 2015, the president issued E.O. 13692 blocking certain Venezulean-related persons and entities based upon a presidential finding

> that the situation in Venezuela, including the Government of Venezuela's erosion of human rights guarantees, persecution of political opponents, curtailment of press freedoms, use of violence and human rights violations and abuses in response to antigovernment protests, and arbitrary arrest and detention of antigovernment protestors, as well as the exacerbating presence of significant public corruption, constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States, and I hereby declare a national emergency to deal with that threat.

E.O. 13692, 80 Fed. Reg. 12,747.

Defendants could have guarded against the contingency of expansion of sanctions but did not.  Instead, PDVSA covenanted in the 2015 Note Agreement and the 2016 Note Agreement that it will maintain all government "approvals" and "licenses" necessary for it to make required payments:

> The Issuer [i.e. PDVSA] will, and will cause each of the Subsidiaries to, maintain in full force and effect all approvals, consents, licenses and authorizations of any Governmental Authority [defined to include the federal government] which may be necessary or the Issuer may deem appropriate under any applicable law or regulation . . . for the performance of its obligations under the Finance Documents [defined to include the notes and the agreement], . . . , except to the extent failure to do so would not be reasonably expected to have a Material Adverse Effect.

2015 Note Agreement at §5.03 and 2016 Note Agreement at §5.03.

The Credit Agreement addressed the possibility of government restraints slightly differently:

> The Borrower shall use the proceeds of the Loans solely . . (b) to pay fees, expenses and costs in connection with this Agreement as and when due; provided that the Loans shall not be repaid with the proceeds of (i) business activities that are or which become subject to sanctions, restrictions or embargoes imposed by OFAC. . .  any similar sanctions imposed by any governmental body to which the Borrower or any of its Subsidiaries is subject (collectively, "Sanctions"); . . .

Credit Agreement at § 6.08.

These provisions demonstrate that the parties contemplated that the activities of PDVSA could "become the subject of sanctions . . . imposed by OFAC" or require a governmental approval or license at some point in the future. The parties could have but did not contractually excuse or postpone PDVSA's performance in that eventuality.  Certainly, none of the agreements excused performance if members of the banking community were hesitant, reluctant or unwilling to process lawful payments because of risk-adversity on sanctions.

Because the expansion of the pre-existing Venezuelan sanctions to include a state-owned business and the risk-adverse reaction of some members of the banking community could have been foreseen and guarded against in the contract, defendants cannot meet its burden of proof on the affirmative defense of impossibility.

B.   The Guarantor's Liability.

Defendants' opposition to summary judgment proceeds from the assumption that the liability of Petróleo, as guarantor, stands or falls on PDVSA's success on its affirmative defense of impossibility.  It offers no defense specific to Red Tree's motions for summary judgment against Petróleo.  Because the Court has found that no reasonable fact finder could find in favor of defendants on their impossibility defense, summary judgment will be

granted against Petróleo, as to whom Red Tree has established the existence of the guaranty, PDVSA's default on the primary obligation, demand on the guarantor and a failure to pay by the guarantor.

Even if PDVSA had been successful in raising a triable issue of fact on the impossibility defense, it would not alter the outcome of Red Tree's motions for summary judgment against Petróleo. In Judge Stanton's summary judgment decision in the Dresser-Rand case, he denied plaintiff's summary judgment motion against PDVSA concluding that the PDVSA had raised a genuine issue of disputed fact on its impossibility defense but nevertheless granted summary judgment against Petróleo, and his decision was affirmed on appeal. Dresser-Rand Co. v. Petróleo de Venezuela, S.A., No. 19-cv-2699 (S.D.N.Y. February 11, 2020) (Stanton, J.), aff'd, No. 20-1990 (2d Cir. Aug 2, 2021) (summary order).

The 2015 Note Agreement, the 2016 Note Agreement and the Credit Agreement set for an expansive waiver of defense to liability. The obligations of the guarantor are "unconditional and absolute and not subject to any reduction, limitation, impairment or termination for any reason (other than the indefeasible payment in full in cash of the Guaranteed Obligations), including (i) any claim of waiver, release, extension, renewal, settlement, surrender, alteration or compromise of any of the Guaranteed Obligations, by operation of law or otherwise. . . ." 2015 Note Agreement at ¶ 6.03(a); 2016 Note Agreement at ¶ 6.03(a); Credit Agreement at ¶ 10.03(a). All defenses to liability on the part of the guarantor were waived in each agreement:

> To the fullest extent permitted by applicable law, the Guarantor hereby waives any defense based on or arising out of any defense of the Issuer or the Guarantor or the unenforceability of all or any part of the Guaranteed Obligations from any cause, or the cessation from any cause of the liability of the Issuer or the Guarantor, other

> than the indefeasible payment in full in cash of the Guaranteed Obligations.

2015 Note Agreement at ¶ 6.04; 2016 Note Agreement at ¶ 6.04; Credit Agreement ¶ 10.04.

New York recognizes that the "broad, sweeping and unequivocal language" of a contractual guaranty may foreclose any challenge to the enforceability of the agreement "as well as any other possible defense" to the guarantor's liability for the obligations of the principal obligor. Dresser-Rand Co. v. PDVSA Petroleo, S.A., No. 20-1990, 2021 WL 2878936, at *2 (2d Cir. July 9, 2021) (quoting Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro, 25 N.Y.3d 485, 494 (2015).) Petróleo has waived any defense to enforcement of the guaranty as against it.  Summary judgment will be granted to Red Tree as against Petróleo on all outstanding sums under the 2015 Note Agreement, the 2016 Note Agreements, the notes issued thereunder and the Credit Agreement.

C.  Defendants' Assertions Regarding Document Production
    Do Not Foreclose Summary Judgment.

Defendants assert that they have not obtained access to all documents that would permit them to oppose summary judgment and that it would be a violation of due process to grant summary judgment against them. This argument lacks substantial merit.

As noted, the summary judgment motions were made prior to removal of these actions in February 2019. It was not until two years and four months after removal that defendants were required to file their oppositions to the motions for summary judgment. In the interim, plaintiffs produced over 13,000 pages of documents to defendants, including documents obtained from the GE Entities. Defendants have examined a corporate representative of Red Tree pursuant to Rule 30(b)(6), Fed. R. Civ. P., and Daniel Wallit of the GE Entities.

Defendants do not complain that Red Tree or the GE Entities have objected to any category of discovery materials. Rather, it expresses frustration that the GE Entities had in their possession a fulsome number of documents in the period of October 2017 but not for December 2017. Defendants have not come forward with any evidence or indication of what they believe documents from December 2017 would show that is relevant to the impossibility defense or any reason to believe they have been deliberately withheld by anyone. The district judge twice extended the discovery period and at no time did defendants move to compel any discovery from plaintiff or any third party.

CONCLUSION

Red Tree's motions for summary judgment (Doc 24 in 19-cv-2519 (PKC); Doc 25 in 19-cv-2523 (PKC)) are GRANTED as against PDVSA and Petróleo. Within 14 days, Red Tree shall submit proposed final judgments, including the calculations of the unpaid balances, accrued interest to date and per diem rates thereafter through date of the judgments, together with an affidavit in support. Defendants will have 7 days to respond. Pursuant to Rule 54(d)(2), the Court's sets the time for defendants' motions for attorney's fees as 21 days after entry of judgments.

SO ORDERED.

Dated: New York, New York
December 22, 2021

P. Kevin Castel
United States District Judge